**COOK CHOCOLATE COMPANY, A DIVISION OF WORLD'S FINEST CHOCOLATE, INC., Plaintiff,**

v.

**SALOMON INC., Philipp Brothers, Inc., Philipp Brothers Trading Corporation, Philipp Brothers Commodities Corp., Cocoa Merchants Ltd., Daniel F. Tulig, Mark Glowatz, and Esther Greenfield, Defendants.**

No. 87 Civ. 5705 (RWS).

United States District Court, S.D. New York.

Sept. 26, 1990.

Cohen & Adolph (William A. Walley, Alan S. Adolph, of counsel), New York City, for plaintiff.

Wachtell, Lipton, Rosen & Katz (Paul Viscarrondo, Jr., Benjamin E. Rosenberg, of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Cook Chocolate Company ("Cook") has moved under Sections 10(b) and 10(c) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10(b), 10(c), to vacate an arbitration award entered in favor of defendants Salomon Inc. ("Salomon"), Phillip Brothers, Inc. ("PBI"), Phillip Brothers Trading Corporation ("PBTC"), Phillip Brothers Commodity Corporation ("PBCC"), Cocoa Merchants, Limited ("CML") (collectively, "Phibro") and Daniel F. Tulig ("Tulig"), Mark Glowatz ("Glowatz") and Esther Greenfield ("Greenfield") (collectively, "the individual defendants"). The defendants have cross-moved under Section 9 of the FAA, 9 U.S.C. § 9, for an order confirming the award, and also for sanctions against Cook's attorneys under Rule 11 of the Federal Rules of Civil Procedure. Because there are insufficient grounds to vacate the award under § 10, Cook's motion is denied, and the defendants' cross-motions to confirm the award are granted. The motion for sanctions under Rule 11 is denied.

The Parties

Cook is a division of World's Finest Chocolate, Inc. ("World's Finest"), a maker of chocolate and confectioneries. Cook purchases the ingredients, such as cocoa and sugar, for World's Finest's use in its production. Salomon is a holding company

incorporated in Delaware, headquartered in New York. PBI is a commodities trading firm which is a wholly-owned subsidiary of Salomon. PBI owns both PBTC, a member of the New York Coffee, Sugar, and Cocoa Exchange ("NYCSCE"), and PBCC, a licensed Futures Commission Merchant and also a member of the NYCSCE. Both PBCC and PBTC trade cocoa futures on the NYCSCE. Greenfield, Glowatz, and Tulig are former employees of PBI, all of whom worked at its cocoa trading desk.

Prior Proceedings

Cook originally filed its complaint on August 4, 1987 charging Phibro and the individual defendants with violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6b(A)–(D), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962, and asserting several common law cause of action, in connection with Cook's purchase of physical cocoa through Phibro. On March 22, 1988, the defendants' motion to stay the litigation pending arbitration before the Cocoa Merchants' Association of America, Inc. ("CMAA") was granted. During the course of the arbitration, Cook returned to this court seeking an order directing the defendants to comply with its subpoenas for production of documents and also an order disqualifying Tulig's counsel for a conflict of interest. On October 27, 1988, this court denied Cook's motion, stating that "Cook will be able to challenge the arbitrators' award after the process is complete...." October 27, 1988 Slip op. at 2,

1988 WL 120464. The time for that challenge has now arrived.

The Arbitration

The arbitration panel consisted of three individuals who were in the business of trading cocoa and cocoa futures: John Bell ("Bell"), the chairman of the panel, the manager of the New York Cocoa Department for Woodhouse Drake & Carey (Trading) Inc., an international commodity trading firm; James Jenkins ("Jenkins"), a senior physical cocoa trader at Gill & Duffus, Inc. and vice president of Gill & Duffus Futures, Inc., both part of an international commodity trading firm; and Jack Ward ("Ward"), president of Baretto Peat, Inc., the United States branch of one of the world's largest processors of cocoa beans and producers of cocoa products. The hearings before the panel entailed nine days of testimony stretched out over more than four months, and generated a transcript of over 2000 pages. Following the close of the hearings, on March 22, 1989, the panel announced an award dismissing all of Cook's claims against the defendants, awarding costs and attorneys' fees to all of the defendants ($392,459.28), and assessing the CMAA's expenses for the arbitration against Cook ($121,017.04). The award also provided for Cook to reimburse the CMAA for any expenses incurred in confirming or collecting the award.

On June 22, 1989, Cook moved to vacate the award under 9 U.S.C. § 10.[1] The defendants cross-moved for confirmation of the award under 9 U.S.C. § 9,[2] and sought sanctions against Cook's attorneys for fil-

---

1. **§ 10. Same; vacation; grounds; rehearing**
In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
   (a) Where the award was procured by corruption, fraud, or undue means.
   (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
   (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed that that a mutual, final, and definite award upon the subject matter submitted was not made.

2. **§ 9. Award of arbitrators; confirmation; jurisdiction; procedure**
   If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, ... then at any time within one year after the award is made any party to the arbitration may apply to the court ... for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

ing the motion to vacate. After the motion had been fully briefed and argued by both sides, on November 21, 1989, Cook filed a second motion seeking to overturn the award under Rule 60(b) of the Federal Rules of Civil Procedure,[3] or in the alternative to supplement its earlier motion to vacate. The motion was briefed again and argued on February 16, 1990. After further submissions by the parties, the motion was considered fully submitted on June 21, 1990.

Cook initially advanced five grounds for overturning the panel's award:

(1) The panel refused to disclose the relationships between the arbitrators and any of the parties.

(2) The panel refused to enforce Cook's subpoenas to Phibro for the production of documents, thereby denying Cook access to the evidence necessary to prove its case.

(3) The arbitrators interfered with Cook's presentation of evidence by questioning Cook's witnesses and by altering the order in which Cook's witnesses testified.

(4) The panel refused to apply the Commodity Exchange Act ("CEA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") to Phibro's behavior.

(5) The arbitration was tainted by the conflict of interest of Tulig's counsel and by the "[in]ability" of the attorney representing the panel "to render competent advice."

Plaintiff's Memorandum of Law in Support of Motion to Vacate Arbitration Award (hereinafter "Cook 6/22/89 Mem.") at 23–36.

In its November 21 motion, Cook essentially repeated many of the same arguments, but sought to bolster its claim by reference to additional documents which had by then come to Cook's attention as the result of other litigation involving the Phibro defendants and counsel for Cook. Cook asserted that these documents proved conclusively that the testimony given by the individual defendants in the arbitration had been perjurious, that Phibro's counsel had misled the arbitrators, and that the panel itself had behaved in a fraudulent manner. Plaintiff's Memorandum of Law in Support of Motion Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (hereinafter "Cook 11/21/89 Mem.") at 19–40.

Unfortunately for Cook, their own arguments merely succeed in demonstrating that none of the evidence can be said to prove anything conclusively. As a result, there are simply no grounds for vacating the arbitrators' award.

Discussion

A. Cook's Rule 60(b) Motion

■ The first matter to be discussed is whether Cook's November motion was properly made under Rule 60(b). As Phibro points out, the Federal Rules apply primarily to proceedings in the federal district courts, not those before arbitration panels. Fed.R.Civ.P. 1. Under Rule 81(a)(3), the rules are extended to cover arbitration proceedings "only to the extent that matters of procedure are not provided for in" the Federal Arbitration Act, 9 U.S.C. Because a motion to vacate an award falls within the scope of "matters of procedure," and because 9 U.S.C. § 9 explicitly provides for this relief, Rule 60(b) is unavailable to Cook in contesting the arbitrators' decision.

Therefore, Cook's November motion under Rule 60(b) is denied, and all papers relating to that motion have been treated as supplemental submissions on the motion and cross-motions under §§ 9 & 10.

---

**3.** Rule 60. Relief From Judgment or Order

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment.

**126**

### B. Cook's Motion to Vacate the Panel's Award

Under § 10, there are four possible grounds for vacating an arbitration award. Briefly stated, these grounds are: fraud or corruption in the proceeding, bias of the arbitrators, the arbitrators' refusal to consider relevant evidence or other misbehavior, and failure of the arbitrators to execute their powers properly. 9 U.S.C. § 10(a)–(d), *supra*, n. 1. In addition, the award must be overturned if the arbitrators acted in "manifest disregard" of the applicable law. *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). Although Cook does not clearly explain how each of its claims relates to these grounds, it appears to assert that all four grounds are met in this case.[4]

As even Cook concedes, a party seeking to overturn an arbitration award is under a heavy burden to prove that the standards for such relief have been met. *Office of Supply, Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 379 (2d Cir. 1972); *Saxis Steamship Co. v. Multifacts International Traders, Inc.*, 375 F.2d 577, 581–82 (2d Cir.1967). "An award will be vacated only on one of the grounds specified in section 10 of the Arbitration Act, or if the conduct of the arbitrators constituted a 'manifest disregard' of applicable law." *Sidarma Societa Italiana di Armamento Spa, Venice v. Holt Marine Industries, Inc.*, 515 F.Supp. 1302, 1306 (S.D.N.Y.), *aff'd without op.*, 681 F.2d 802 (2d Cir. 1981). Therefore, it is necessary to consider each of these grounds to determine whether all of Cook's claims satisfy any of them.

### 1. *Fraud, Corruption, or Undue Means*

Cook asserts that Phibro's counsel repeatedly misrepresented facts to the panel, with the effect of precluding Cook from pursuing vital lines of inquiry and preventing Cook from gaining access to relevant evidence. Review of the record of the arbitration reveals that at least some of the alleged "misrepresentations" were not assertions of a testimonial nature, but rather legal arguments regarding the relevance of certain evidence or the proper inferences to be drawn from the evidence. With regard to all of the statements, Cook's disagreement and its citations of evidence which supports that disagreement is simply insufficient to do more than to establish that a reasonable person could have seen things Cook's way. The fact that there is an argument against the truth of any of the statements does not establish that the arbitration award was the result of fraud.

In addition, Cook's assertion of the alleged conflict of interest of Tulig's counsel and the alleged incompetence of the counsel for the panel can be considered as a claim for relief because of the "corruption" of the proceedings.[5] However, not only does Cook fail to support either of the allegations, it presents no evidence of how either of these factors prejudiced the proceedings. The fact that Tulig's lawyer's firm had at one time been counsel to the CMAA itself does not, in and of itself, suggest a reason for the proceedings to have been corrupted.

Furthermore, Cook's accusations of incompetence and dishonesty against the panel's attorney were raised during the proceedings. After independent consideration of the same evidence presented by Cook in the present motion, the arbitrators confirmed their confidence in their counsel's ability and integrity. Tr. at 1057–58. Cook cannot satisfy its burden of showing how its allegations against the panel's counsel justify vacating the award through its conclusory assertion that the attorney's

---

4. Rather than relate its arguments to the statutory language, Cook prefers to reason by analogy from prior cases in which arbitration awards have been overturned on all of these grounds.

5. Because Cook did not explain exactly how each of its claims is intended to satisfy either one of the statutory grounds under § 10 or the "manifest disregard of the law" test, *see supra* n. 4, it is necessary to make certain assumptions regarding which of Cook's arguments are intended to fall under each category. The difficulty is minor, however, as even considering all of the claims together, none of the tests is satisfied.

prior actions had "an obvious impact ... on the appearance of his ability to render appropriate legal advice to the panel" (Cook 6/29/89 Mem. at 19), nor has it demonstrated why such an impact on the *appearance* of the attorney's ability rises to the level which requires reversal of the award. *Cf. International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548 (2d Cir.) (party seeking to establish evident partiality of arbitrators must show more than an "appearance of bias"), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981).

### 2. *Partiality of the Arbitrators*

Most of Cook's arguments appear to be directed at the arbitrators themselves. Cook claims that the record as a whole indicates such partiality in favor of the defendants that the only explanation is that the panel was biased against Cook from the start. Upon closer examination, Cook's claims fall into three general categories:

(1) The panel's rulings against Cook;

(2) The panel's interference in Cook's presentation of its case; and

(3) The arbitrators' personal behavior, including animosity toward Cook's counsel and witnesses and partiality toward defendants' counsel and witnesses.

The panel's rulings against cook include its decision not to allow Cook discovery of all of the materials sought, based on the panel's determination of the materials' relevance, its alleged failure to apply the CEA and RICO, and its ultimate decision against Cook. However, there is simply insufficient evidence to establish even that the panel's rulings were incorrect, let alone that they stemmed from a venal motive. *See, e.g., Bell Aerospace Co. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir.1974) (repeated rulings in favor of one party to arbitration insufficient to establish partiality); *cf. Catz American Co. v. Pearl Grange Fruit Exchange, Inc.*, 292 F.Supp. 549, 552 (S.D.N.Y.1968) (party challenging arbitrators' partiality must demonstrate "something more than 'mere error in the law or failure on the part of the arbitrators to understand or apply the law'") (quoting *San Martine Compania de Navegation,*

*S.A. v. Saguenay Terminals, Ltd.*, 293 F.2d 796 (9th Cir.1961)).

A decision as to whether evidence is relevant is heavily rooted in the facts, hence even if this court disagreed with the panel's rulings it would be inappropriate to substitute its own conclusion for that of the arbitrators. *See Saxis Steamship Co., supra*, 375 F.2d at 582. Where the party challenging the arbitrators' rulings has failed to even demonstrate the error in those rulings, it cannot be said that the rulings establish partiality of the panel. *Hunt v. Mobil Oil Corp.*, 654 F.Supp. 1487, 1512 (S.D.N.Y.1987).

Regarding Cook's claims that the panel refused to apply the CEA and RICO to the dispute, the record simply does not support such a finding. Cook's citations to the record indicate that the panel was not interested in having the statutes read into the transcript or placed in evidence, not that the arbitrators saw no relevance in their requirements. The arbitrators' repeated efforts to "limit" Cook's proof do not clearly indicate that they were uninterested in possible CEA violations by Phibro with respect to its transactions with Cook, but can just as easily be interpreted as a lack of interest in Phibro's conduct with respect to *other* accounts.

As for the allegations that the arbitrators' interfered with Cook's presentation of its case, both by directing a change in the order of witnesses and by questioning the witnesses directly, the panel's actions were well within the limits of its discretion. Cook asserts that in *Hunt, supra*, 654 F.Supp. at 1511, Judge Weinfeld "implicitly recognized" "[t]hat the order of proof is a cognizable component of procedural due process" (Cook 6/21/89 Mem. at 31). In fact, despite Cook's hopeful characterization, the *Hunt* case clearly supports the arbitrators' actions in this case: *"The order of proof clearly was within [the arbitrators'] discretion.... Further, and more importantly, there is no showing that the Hunts were prevented, by reason of [the reordering,] from offering any probative and relevant evidence, oral or documentary, in support of their claims...."*

654 F.Supp. at 1511. *See also Catz American, supra,* 292 F.Supp. at 553.[6]

Indeed, it appears that Cook's desired order of presentation is precisely the element which led to many of the problems, including those which prompted the arbitrators to interrogate the witnesses themselves. Cook's decision to build its case on the testimony of the three individual defendants prior to calling its own representatives placed it in a very difficult position. The witnesses' inability to remember the details of the transactions at issue, the panel's confusion over what Cook's theory of the case was, and the continuous conflict with the numerous defense counsel all contributed to a record which is unclear and unfocussed. Cook's counsel does not seem to have helped matters with his attitude toward the panel—Cook admits that he may have "given as good as he got" (Cook 6/21/89 Mem. at 20)—when the arbitrators attempted to investigate how Cook sought to prove its damages.

In light of this general confusion, and considering that the arbitrators were experienced in the cocoa trade—more so than were any of the lawyers—their attempts to elicit those facts which they considered relevant to the dispute simply cannot be condemned as an impermissible abuse of their discretion. An arbitration proceeding is expected to be both less formal and more expedient than a formal hearing in court. As the Second Circuit has noted,

> A judge is not wholly at the mercy of counsel, and would be remiss if he did not participate in questioning to speed proceedings and eliminate irrelevancies. *A fortiori* an arbitrator should also act affirmatively to satisfy and expedite the proceedings before [the arbitrator], since among the virtues of arbitration which presumably moved the parties to agree upon it are speed and informality.

Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 21 (2d Cir.1962). Again, Cook has not carried its burden of showing that the panel's actions were even improper, let alone a reasonable basis for accusations of bias.

■ Finally, Cook relies on the numerous clashes between its counsel and the arbitrators to prove that the panel was not impartial. Indeed, it appears that many of those involved in the proceedings—the defendants, defendants' counsel, the arbitrators and their counsel—were personally offended by the behavior of Cook's attorney. Unfortunately, the transcript does not reveal where or when the mutual dislike first arose.[7] Nevertheless, it appears to be true that Cook's counsel "gave as good as he got," and perhaps even better. Under such circumstances, in a proceeding overseen not by professional judges, who are trained to preserve a neutral appearance, but by ordinary businessman, the disputes between the panel and counsel for Cook do not confirm bias such as would warrant vacating the award.

One possible basis for the panel's attitude toward Cook's counsel is it awareness of the genesis of the dispute between Cook and Phibro. Philip Freeman ("Freeman"), Cook's main witness and damages expert, who was expected to contradict and impeach the testimony given by the individual witnesses and to explain how Phibro's behavior had caused Cook to suffer $20 million in damages, was a former employee of Phibro. After he resigned from Phibro, where his salary was $51,000 per year, he sought to enter into a contract with Phibro, under which he would be paid $2.5 million. In this attempt he was represented by the same firm which represented Cook in this dispute. Freeman admitted that, after Phibro had rejected his offer, he had begun to help former Phibro customers to sue Phibro. Tr. at 1326. Freeman also re-

---

**6.** Of course, Cook claims that it was, in fact, prevented from offering probative and relevant evidence by the arbitrators' actions. However, these claims are based on the panel's alleged failure to admit the relevant evidence and on its asserted usurpation of the questioning from Cook's counsel, *not* on the reordering of the presentation.

**7.** As one of the participants lamented during one exchange, "If only the record could understand the tone." Tr. at 822 (statement of counsel for Glowatz).

vealed that he had been retained by Cook under an agreement which would have paid him 15% of any award Cook received—a potential pay-off of $9 million, if Cook could recover treble its alleged $20 million under the RICO allegations. Tr. at 1326–28.[8] Particularly in light of the arbitrators' experience in the cocoa market, they might well have been suspicious of the motive of both Cook's counsel and Freeman.

Moreover, any hard feelings by the panel appear to have been directed more at Cook's attorney than at any of its own representatives. While Cook claims that the panel's bias against it is demonstrated by the general mistreatment of Cook's witnesses, careful review of the record belies this allegation. When the panel directed Cook to bring on its own first witness, Edmund Opler ("Opler"), Cook's former president and CEO, it requested that Opler appear on December 5, the next scheduled hearing date. When Opler appeared on December 6, one day late, Cook asserts that "the panel berated both counsel and the witness" because of Opler's failure to appear as scheduled. Cook 6/22/89 Mem. at 13. The transcript, however, indicates that the panel criticized Cook's counsel for failing to notify the panel that Opler would be unavailable, and for not seeking to reschedule the witness' appearance, but never attempted to place the blame on Opler. Tr. at 647–52. At a subsequent hearing, when the panel directed that Cook's counsel choose either complete the examination of Opler at the December 13 session or else make him available for the January sessions, counsel refused to do either, insisting that "[w]e will make that decision for those four days when we feel ready." Tr at 949–50. The panel did not, as Cook claims, "indicate[ ] it would receive no fur-

ther testimony from" Opler, it merely directed that *if* further testimony was necessary, then Opler should be available for January sessions.

■ Cook also asserts, as further evidence of the partiality of the arbitrators, that

the panel[ ] insist[ed] that Philip Freeman produce a particular and lengthy damage computation, tailored to their specifications, in a period which included the Christmas and New Year's holidays, despite the fact that the next scheduled hearing date was some two weeks after the deadline for its production.

Cook 6/22/89 Mem. at 20. Again, the transcript indicates that, while the panel did insist on the deadline over the objection of Cook's *counsel,* the date was originally *suggested* by Freeman, who never indicated that he considered the assignment to be the least bit onerous. Tr. at 1024.

■ The final attack on the panel's partiality is based on the arbitrators' alleged failure to disclose their past relationships with the defendants or to allow Cook's attorney to cover this area with the defendant witnesses. While it may be true that full disclosure in this area would have been preferable, the arbitrator's actions fall short of what is typically required to make out a claim of bias. Cook has not claimed that it lacked the opportunity at the outset of the arbitration to investigate any connections between the parties and the panel members. None of the three arbitrators was challenged by any of the participants. At some point after the proceeding had begun, the participants and the panel began to suspect that Cook's lawyer was attempting to fashion a record which would

---

8. As Phibro points out, Freeman, as a contingent witness, might well have been precluded from testifying if the case had proceeded in court rather than arbitration. Defendant Phibro Entities' Memorandum of Law in Opposition to Cook's Motion to Vacate the Award (hereinafter "Phibro 8/4/89 Mem.") at 30 n. *. *See, e.g., Cresswell v. Sullivan & Cromwell,* 704 F.Supp. 392 (S.D.N.Y.1989); *Cosgrove v. Sears Roebuck and Co.,* No. 81 Civ. 3482 (CSH), 1987 WL 33595 (S.D.N.Y. December 16, 1987). This arrangement could also have tainted the panel's view of Cook's lawyer. Under Disciplinary Rule 7–109(C) of the Code of Professional Responsibility, "[a] lawyer shall not ... acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case." Phibro Memorandum of Law in Opposition to Cook's Motion to Vacate the Award (hereinafter "Phibro 8/4/89 Mem.") at 30 n. *. Certainly Cook's lawyer *acquiesced* in Freeman's fee contract—there was evidence that the law firm *arranged* it.

support an eventual claim of bias in the event that the award went against Cook. *See, e.g.,* Tr. at 492–99. Under the circumstances, the panel was justified in not allowing Cook's attorney to delve into these matters during examination of the witnesses.[9]

### 3. *Misconduct of arbitrators; refusal to hear relevant testimony*

For substantially the same reasons as those discussed above, the arbitrators' conduct of the proceedings was not "the most egregious error" required by *Hunt, supra,* 654 F.Supp. at 1511, to justify overturning the award under § 10(c).

### 4. *Imperfect execution of the arbitrators' powers*

None of Cook's arguments state a claim under § 10(d).

### 5. *Manifest disregard of the law*

As the Second Circuit has stated, "Manifest disregard of the law" by arbitrators is a judicially-created ground, which introduced by the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953).... Although the bounds of this ground have never been defined, it clearly means more that error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly-governing legal principle but decides to ignore or pay no attention to it.... The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986). Cook has not met this standard.

Once it is determined, as it has been here, that the arbitrators were not partial to the defendants or biased against Cook, Cook's arguments lose much of their weight. Furthermore, under the circumstances of the present case, there is nothing about the CEA or RICO which is "well defined, explicit, and clearly applicable." *Id.*

Nor is there any facet of Freeman's alleged damages calculation which is even persuasive, let alone "obvious" or "clearly applicable." Briefly stated, Freeman claimed that despite the fact that Opler, who was informed of the prices on the cocoa futures market daily (Tr. 679), had agreed upon the price of each and every one of the transactions in dispute (Tr. 676, 686), Cook had somehow suffered $20 million in damages. The weakness of his theory and the panel's ultimate rejection of it are more than amply supported by the record. Thus, the strict limitation placed on review of an arbitration award by *Bobker* prevents the reversal of the panel's decision.

### C. The Cross–Motions For Confirmation of the Award.

"Absent a statutory basis for modification or vacatur, the district court's task [is] to confirm the arbitrator's final award as mandated by section 9...." *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987). As all of Cook's arguments for reversal have been disposed of, the award as ordered by the panel must be confirmed.

### D. Phibro's Motion for Rule 11 Sanctions.

Although all of Cook's arguments have been rejected because of insufficient evidence, it is not "patently clear that [the] claim ha[d] absolutely no chance of success under the existing precedents," thus that Rule 11 sanctions are not warranted. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

---

**9.** Tellingly, Cook still does not present any evidence of any "hidden" connections which would have indicated bias on the part of any of the arbitrators. Absent a showing that there was in fact some basis for counsel's line of questioning, there is no abuse of discretion in the panel's action.

## Conclusion

Although Cook is correct in asserting that it was not required to appeal the arbitration award under the CMAA rules prior to filing a motion to vacate the decision, it appears that most of its arguments presented here would have been better suited to such a forum. Cook acknowledges that the burden it bears is a heavy one; unfortunately it has not borne that burden well. For the foregoing reasons, Cook's motion to vacate the award of the arbitrators is denied, the defendants' cross-motions to confirm the award are granted, and the defendants' motions for Rule 11 sanctions are denied.

It is so ordered.