J.D. EDWARDS WORLD SOLUTIONS COMPANY, J.D. Edwards World Source Company, and J.D. Edwards & Company, Appellants,

v.

ESTES, INC., Appellee.

In re J.D. Edwards World Solutions Company, J.D. Edwards World Source Company, and J.D. Edwards & Company, Relators.

Nos. 2–02–026–CV, 2–02–054–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 14, 2002.

Godin & Baity, L.L.C., and Stephen J. Baity, Steven L. Heisdorffer, and Alan T. Dickey, Denver, CO, Gregory A. Ross, P.C., and Gregory A. Ross, Wichita Falls, for appellants.

Whitaker, Chalk, Swindle & Sawyer, L.L.P., and Mack Ed Swindle and Thomas F. Harkins, Jr., Fort Worth, for appellee.

Panel A: DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION

SAM DAY, Justice.

J.D. Edwards World Solutions Company, J.D. Edwards World Source Company, and J.D. Edwards & Company (collectively "J.D. Edwards") bring both an interlocutory appeal and an original proceeding seeking mandamus relief from a trial court's order vacating an arbitration award in their favor.

### FACTUAL AND PROCEDURAL BACKGROUND

J.D. Edwards and Estes, Inc. entered a software licensing agreement containing an arbitration clause. The arbitration clause mandated that all disputes concerning the agreement would be submitted to arbitration, and that each party would choose an arbitrator and then the two party-appointed arbitrators would choose the third arbitrator. Estes subsequently sued J.D. Edwards over a dispute concerning the agreement, and the district court granted J.D. Edwards's motion to compel arbitration.

Estes contacted J.D. Edwards concerning selection of the arbitrators: "We discussed the use of one party arbitrator each and a third neutral arbitrator, or alternatively three neutral arbitrators. We need to reach an agreement in that regard." J.D. Edwards replied: "It is J.D. Edwards's preference that each party select an arbitrator and those arbitrators would then select a third neutral arbitrator." Estes then selected Randall Hand as its party-appointed arbitrator, and J.D. Edwards selected Lawrence W. Treece.

Hand and Treece selected Steve A. Mains to serve as the third, neutral arbitrator. Mains disclosed prior business interactions with Estes's attorney and his law firm. Neither party objected to Mains serving as the neutral arbitrator, and the American Arbitration Association ("AAA") appointed him as the third member of the arbitration panel.

On June 27, 2000, the three arbitrators, the AAA senior case manager, and the attorneys for both Estes and J.D. Edwards participated by telephone in a preliminary hearing. The panel then entered an order addressing the neutrality of the party-appointed arbitrators: "The parties agreed and it is therefore ordered that beginning June 27, 2000 the party-appointed arbitrators in this matter shall serve as neutral arbitrators. Each party-appointed arbitrator shall directly bill the party that appointed him for his services."

The arbitration hearing lasted ten days, and the arbitrators unanimously entered an award in J.D. Edwards's favor. The award also ordered that each party was responsible for payment of the fees and expenses of its party-appointed arbitrator and that "the compensation and expenses of the neutral arbitrator" were to be borne equally by the parties.

Estes filed a motion to vacate or modify the arbitration award because it claimed that a neutral member of the panel, Treece, was improperly connected to and biased in favor of J.D. Edwards. The basis of this allegation was the Martindale–Hubbell Law Directory listing for Treece's law firm, which lists J.D. Edwards as a representative client. Estes argued that once the arbitration panel agreed that Treece and Hand would serve as neutral arbitrators, Treece had a duty to disclose his relationship with J.D. Edwards.

The trial court concluded that Treece was a neutral arbitrator who had a duty but failed to disclose his prior or present relationship with J.D. Edwards. Therefore, the trial court vacated the arbitration award. The trial court did not direct a rehearing or order a new arbitration.

## MANDAMUS, INTERLOCUTORY APPEAL, OR NO APPELLATE REVIEW AT ALL?

■ J.D. Edwards present this case in a dual posture as both an interlocutory appeal and an original mandamus proceeding. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding) (observing that when it is unclear whether an arbitration-based challenge is governed by the Federal Arbitration Act or the Texas Arbitration Act, parties must pursue parallel interlocutory appeal and mandamus proceedings). We consolidated the interlocutory appeal and mandamus proceeding and will address both in this opinion. *In re Valero Energy Corp.,* 968 S.W.2d 916, 916–17 (Tex.1998) (orig. proceeding). We will also address Estes's motion to dismiss for want of jurisdiction.

Both parties agree that the arbitration is governed by the Federal Arbitration Act ("FAA") because the license agreement involves interstate commerce. *See* 9 U.S.C.A § 2 (West 1999). They disagree, however, about whether or how a party may challenge vacation of the arbitration award. In an abundance of caution, J.D. Edwards argue that they may challenge vacation of the arbitration award through either an interlocutory appeal or mandamus proceeding. Estes argues that regardless of the mechanism used to bring the challenge, this court has no jurisdiction.

■ The FAA authorizes interlocutory appeal of an order vacating an arbitration award. *Id.* § 16(a)(1)(E). When Texas courts confront procedural issues involving a case subject to the FAA, however, Texas procedural rules apply instead of federal rules. *Tipps,* 842 S.W.2d at 272 (citing *Southland Corp. v. Keating,* 465 U.S. 1, 17 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984)). Therefore, we look to the Texas Arbitration Act ("TAA"), which provides that "[a] party may appeal a judgment or decree entered under this chapter [Texas General Arbitration Act] or an order ... vacating an award without directing a rehearing." TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(5) (Vernon Supp.2002).

The TAA expressly limits interlocutory appeal of orders denying an application to compel arbitration or granting an application to stay arbitration to those governed by the TAA. *Id.* § 171.098(a)(1), (2). Thus, parties in Texas courts challenging the denial or stay of arbitration under the FAA must do so through mandamus because the TAA does not provide them an adequate remedy by appeal. *See id.; Tipps,* 842 S.W.2d at 272–73. The TAA contains no such limitation to interlocutory appeal of orders vacating an arbitration award without directing a rehearing. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(5). Therefore, we conclude that a party challenging an order vacating an arbitration award without directing a rehearing in an arbitration governed by the FAA may do so through an interlocutory appeal.

By analogizing an order vacating an arbitration award to an order granting a new trial, which may not be appealed, Estes contends that this court has no jurisdiction to determine an interlocutory appeal from an order vacating an arbitration award. This would be so if the trial court had also directed a rehearing or ordered a new arbitration. *Stolhandske v. Stern,* 14 S.W.3d 810, 814 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (holding that an order vacating an arbitration award and

directing a rehearing is the functional equivalent of an order granting a new trial). The legislature expressly limited the availability of appellate review of an order vacating an arbitration award to those orders that do not direct a rehearing. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(5). Therefore, when a trial court vacates an arbitration award and directs a rehearing, the appellate court has no jurisdiction to review that order, but when it fails to direct a rehearing, the court of appeals has jurisdiction in an interlocutory appeal. *Stolhandske,* 14 S.W.3d at 814.

A trial court order vacating an arbitration award is an interlocutory order. *Id.* at 813. Interlocutory orders may be appealed only if permitted by statute. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding). Because the TAA expressly authorizes interlocutory appeal of an order vacating an arbitration award without directing a rehearing, we have jurisdiction over this interlocutory appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(5).

Because we hold that J.D. Edwards have an adequate remedy by interlocutory appeal, we deny their petition for writ of mandamus. We also deny Estes's motion to dismiss for want of jurisdiction.

## VACATUR OF ARBITRATION AWARD

Under section 171.014 of the TAA, the district court shall vacate an arbitration award if there has been "evident partiality by an arbitrator appointed as a neutral." *Id.* § 171.088(a)(2)(A); *see also* 9 U.S.C.A. § 10(a)(1) (authorizing vacatur of arbitration award under FAA "[w]here there was evident partiality or corruption in the arbitrators").

The Texas Supreme Court has held that a prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she does not disclose facts that might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *Burlington N. R.R. Co. v. TUCO, Inc.,* 960 S.W.2d 629, 636 (Tex.1997); *see also Mariner Fin. Group, Inc. v. Bossley,* 79 S.W.3d 30, 32, 35 (Tex.2002). J.D. Edwards bring five issues on appeal, which raise two major arguments: (1) the trial court erred by vacating the arbitration award because Treece was never a neutral arbitrator and, as a result, had no duty to disclose his relationship with J.D. Edwards, and (2) evidentiary challenges asserting that the evidence is legally insufficient to support the trial court's finding that Treece was impartial and that the trial court erred by refusing to consider parol evidence to contradict language ordering Treece to serve as a neutral arbitrator.

It is undisputed that prior to June 27, 2000, Treece was a party-appointed arbitrator. The primary dispute in this appeal is whether his status changed to one of neutral arbitrator as a result of the Preliminary Hearing Order. According to J.D. Edwards's attorney, he inquired during the June 27 hearing whether an arbitration rule providing that if the parties agreed, no one acting on behalf of any party could communicate concerning the arbitration with any party-appointed arbitrator applied in this arbitration. He also inquired about prior ex parte communications between the parties and their party-appointed arbitrators, and Estes's attorney disclosed that he had communicated with Hand concerning the arbitration. Following the hearing, the panel entered the Preliminary Hearing Order. One section of that order was titled "Neutrality of party-appointed arbitrators" and expressly said the parties agreed that as of June 27, 2000 the party-appointed arbitrators "shall

serve as neutral arbitrators." The order was silent about ex parte communications between the arbitrators and parties.

The trial court determined that the Preliminary Hearing Order was unambiguous and refused to consider parol evidence concerning the order. J.D. Edwards assert that the trial court erroneously applied the parol evidence rule. The parol evidence rule, which is a rule of substantive law and not a rule of evidence, applies only to contractual or jural writings evidencing the creation, modification, termination, or securing of a particular right or obligation. *Gannon v. Baker*, 818 S.W.2d 754, 755 (Tex.1991); *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958). Under the parol evidence rule, extrinsic evidence is not admissible to add to, vary, or contradict the terms of an unambiguous contract, order, or judgment. *S. Sav. & Loan Ass'n v. Lewis*, 536 S.W.2d 677, 678 (Tex.App.-Waco 1976, writ dism'd by agr.) (citing *Bexar County v. Hatley*, 136 Tex. 354, 150 S.W.2d 980, 987 (1941); *Collins v. Ball*, 82 Tex. 259, 17 S.W. 614, 616 (1891)); *see also Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000) (construing agreed judgment in same manner as contract).

J.D. Edwards argue that the trial court should have considered only the Final Arbitration Award, which they contend is inconsistent with the Preliminary Hearing Order. The alleged inconsistency comes from the payment provisions of the two documents. The arbitrators addressed payment in the "Neutrality of party-appointed arbitrators section" of the Preliminary Hearing Order, immediately after the sentence stating that the party-appointed arbitrators "shall serve as neutral arbitrators," by ordering that "[e]ach party-appointed arbitrator shall directly bill the party that appointed him for his services."

In the Arbitration Award, the arbitrators required each party to pay "the fees and expenses of the arbitrator selected by such party. All other fees and expenses of the arbitration including the fees and expenses of the third arbitrator shall be split equally by the Claimant and Respondent." The Arbitration Award also states that "the compensation and expenses of the neutral arbitrator" shall be deducted from deposits previously advanced to the American Arbitration Association.

According to J.D. Edwards, the Arbitration Award distinguishes between the party-appointed arbitrators and the neutral arbitrator; therefore, the trial court could not look to the Preliminary Hearing Order's language concerning neutral arbitrators to contradict the Arbitration Award's recognition of Treece as a party-appointed arbitrator. J.D. Edwards argue that the Arbitration Award controls in any conflict between the Preliminary Hearing Order and the Arbitration Award.

If the language used in the Preliminary Hearing Order can be given a certain or definite meaning, it is not ambiguous and we are obligated to interpret it as a matter of law. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex.2000); *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex.1999). An order is not ambiguous because of a simple lack of clarity. *See DeWitt*, 1 S.W.3d at 100. Nor does an ambiguity arise merely because the parties advance differing interpretations. *Lopez*, 22 S.W.3d at 861; *DeWitt*, 1 S.W.3d at 100. Rather, an ambiguity exists only after the application of established rules of contract construction leaves an order susceptible to more than one meaning. *See Lopez*, 22 S.W.3d at 861; *DeWitt*, 1 S.W.3d at 100. Further, for an ambiguity to exist, both potential meanings must be reasonable.

*Lopez*, 22 S.W.3d at 861; *DeWitt*, 1 S.W.3d at 100.

■ The language in the Preliminary Hearing Order can be given a definite legal meaning and is not reasonably susceptible to more than one meaning. Arbitration is a matter of consent, and the parties are generally free to structure their arbitration agreements as they see fit, including specification of the rules under which the arbitration will be conducted. *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 151, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968) ("parties ... are the architects of their own arbitration process"); *Mariner*, 79 S.W.3d at 44 (Owen, J., concurring); *TUCO*, 960 S.W.2d at 635–36. J.D. Edwards and Estes modified the terms of their arbitration agreement and that modification is embodied in the Preliminary Hearing Order, in which the panel ordered Treece and Hand to "serve as neutrals" for all purposes but one: they would continue to be paid by the parties that appointed them.

■ When determining whether the order is ambiguous, we consider the entire writing in an effort to harmonize and give effect to all of the provisions so that none will be rendered meaningless. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 210 (Tex.1998); *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). According to J.D. Edwards, Treece could not be a "neutral" arbitrator because both the order and Arbitration Award provide that he was to be paid by J.D. Edwards. This construction of the order would render the "serve as neutrals" language meaningless because it would eliminate it entirely. According to the plain language of the order, the parties agreed to continue to pay the fees and expenses of the arbitrators they appointed, but they did not carve out any other excep-

tions to the "serve as neutrals" language. Thus, beginning on June 27, 2000 Treece was to be a neutral arbitrator.

We hold that the parol evidence rule precludes the admission of extrinsic evidence concerning the Preliminary Hearing Order because the order is unambiguous. Thus, the trial court did not err by ruling that the parol evidence rule did not apply because the Arbitration Award could not be used to add to, vary, or contradict the terms of the Preliminary Hearing Agreement.

In the seminal case on the issue of arbitrator partiality, the United States Supreme Court held that a neutral arbitrator has a duty to disclose to the parties any dealings that might create an impression of possible bias. *Commonwealth Coatings*, 393 U.S. at 149, 89 S.Ct. at 339. In that case, the neutral arbitrator did not disclose that he had a significant business relationship with one of the parties. *Id.* at 146, 89 S.Ct. at 338. In construing the relevant statute, which authorized vacation of an arbitration award "[w]here there was evident partiality ... in the arbitrators," the Supreme Court concluded that the legislature intended to provide for impartial arbitrations. *Id.* at 147, 89 S.Ct. at 338. Thus, even though there was no allegation that the arbitrator was actually biased, the Supreme Court reversed a trial court order refusing to set aside the arbitration award and admonished arbitrators to avoid even the appearance of bias. *Id.* at 150, 89 S.Ct. at 340.

The Texas Supreme Court has also twice addressed evident partiality of arbitrators. In *Burlington Northern Railroad Company v. TUCO, Inc.*, the supreme court discussed the different standards regarding failure to disclose applied by other state and federal courts since *Commonwealth Coatings*. 960 S.W.2d at 632–35. The Texas Su-

preme Court decided on a broad approach, holding that evident partiality is exhibited when a neutral arbitrator does not disclose facts that might create a reasonable impression of the arbitrator's partiality to an objective observer. *Id.* at 636. A neutral arbitrator has a duty of disclosure, and evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information establishes partiality or bias. *Id.* at 636–37.

In *TUCO,* the supreme court explained that to choose their arbitrators intelligently, the parties must have access to all information that might reasonably affect the arbitrator's partiality. *Id.* at 635. Thus, the supreme court cautioned that even though a neutral arbitrator need not disclose relationships or connections that are trivial, a conscientious arbitrator should err in favor of disclosure. *Id.* at 637. This is because it is for the parties to determine, after full disclosure, whether a particular relationship is likely to undermine an arbitrator's impartiality. *Id.* at 638. The supreme court also emphasized that the duty to disclose is a continuing duty that applies throughout the arbitration process. *Id.* at 637.

Based on these holdings, the supreme court determined that a neutral arbitrator who did not disclose a lucrative business referral from a party-appointed arbitrator's law firm during the arbitration was evidently partial as a matter of law. Consequently, it directed the trial court to vacate the arbitration award. *Id.* at 631, 639–40.

Earlier this year, the supreme court repeated *TUCO's* objective test in *Mariner,* 79 S.W.3d at 32, 35. In that case, a neutral arbitrator did not disclose his adverse relationship with a party's expert witness. *Id.* at 30–31. Two months after the arbitration, the Bossleys' expert witness dis-

covered a deposition transcript in which she had testified against the neutral arbitrator in a legal malpractice case. The expert witness had forgotten about the testimony at the time of the arbitration, but informed the Bossleys once she discovered the transcript while moving offices. *Id.* at 31–32. The Bossleys moved to vacate the arbitration award. Mariner then filed a summary judgment seeking confirmation of the award, which the trial court granted but the court of appeals reversed. *Id.* at 32.

On appeal, Mariner argued that the Bossleys waived any complaint about the neutral arbitrator's partiality because they did not object prior to submission of the case to arbitration. They also argued that the neutral arbitrator had no duty to disclose his relationship with the expert witness because the Bossleys could have easily discovered it. Likewise, J.D. Edwards assert that Treece had no duty to disclose his firm's relationship with J.D. Edwards because Estes had easy access to the Martindale–Hubbell listing it relies on to show Treece's evident partiality and because the undisclosed information was trivial. J.D. Edwards also argue that Estes waived its right to challenge the arbitration award because it did not object to Treece until after the arbitration panel issued an award adverse to Estes.

In *Mariner,* the supreme court held that there was a fact question because the undisclosed information was material to the determination of evident partiality and the Bossleys could not waive an objection based on a prior adverse relationship between their expert and the neutral arbitrator that they knew nothing about. *Id.* at 33. The supreme court expressly did not decide whether there was a duty to investigate to determine potential arbitrator bias because there was no evidence that the Bossleys could have discovered the rela-

tionship any sooner than they did.[1] *Id.* at 33.

In this case, Treece had a duty to disclose his and his firm's business relationship with J.D. Edwards once he agreed and was ordered to serve as a neutral arbitrator. The fact that Treece's law firm included J.D. Edwards as a representative client in its Martindale–Hubbell listing belies Treece's claims that his relationship with J.D. Edwards was trivial. Furthermore, even though Estes may have easily discovered the Martindale–Hubbell listing earlier, it could not have known of Treece's personal, prior efforts to develop J.D. Edwards's business. In an affidavit filed in the post-arbitration proceedings, Treece stated that prior to the arbitration, he had given J.D. Edwards advice on a few antitrust questions and had made a presentation to J.D. Edwards's legal department. The parties, not this court, should have been the ones to determine whether the relationship was trivial, but they were not afforded that opportunity because Treece failed to disclose his prior relationship with J.D. Edwards.

As of June 27 when the parties agreed that all three arbitrators would serve as neutrals, Estes knew only that Treece had originally been appointed by J.D. Edwards. While it could not have objected to Treece serving as a party-appointed arbitrator, if it had known of Treece's prior and ongoing relationship with J.D. Edwards it may have decided not to agree to the party-appointed arbitrators serving as neutrals. Estes was forthcoming concerning its prior relationship and ex parte communications with Mains and Hand, but J.D. Edwards stood mute concerning its relationship with Treece. Thus, we conclude that Treece's failure to disclose his relationship with J.D. Edwards exhibits evident partiality as a matter of law. Therefore, we need not determine whether the evidence was legally sufficient to demonstrate that Treece was actually biased. *See TUCO,* 960 S.W.2d at 636–37.

## CONCLUSION

We deny J.D. Edwards's petition for writ of mandamus, deny Estes's motion to dismiss for want of jurisdiction, and affirm the trial court's order vacating the arbitration award.

---

1. A four justice concurrence would have held that an arbitrator's failure to disclose an adverse relationship cannot as a matter of law constitute partiality when the complaining party had the means to discover the undisclosed facts. *Id.* at 35–36 (Owen, J., concurring).