IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00152-CV

No. 10-05-00153-CV

 

Holcim (Texas) Limited Partnership 

f/k/a Holman Texas Limited Partnership,

                                                                                Appellant

 v.

 

Humboldt Wedag, Inc.,

                                                                                Appellee

 

 

 



From the 40th District Court

Ellis County, Texas

Trial Court Nos. 65034 and
67978

 



Opinion



 








          Holcim (Texas) Limited Partnership fka
Holman Texas Limited Partnership appeals the denial of its petition to vacate
an arbitration award between Humboldt Wedag, Inc. (“HWI”) and itself.  Holcim contends
in three issues that the court erred by (1) denying its petition because there
was no arbitration agreement between Holcim and HWI; (2) denying its petition
because the arbitration panel exceeded its authority by awarding relief based
upon claims that were not submitted to it and beyond its jurisdiction; and (3)
improperly modifying the arbitration award.  Because we find that no arbitration
agreement exists between Holcim and HWI, we will reverse and remand.

Background

          In September 1998, Holcim entered a
turnkey agreement with Watkins for the construction of a cement production line
at Holcim’s factory in Midlothian.  The turnkey agreement required Watkins to
provide a fully functional production line.  Subsequently, Watkins entered an
agreement with HWI as a subcontractor.  This agreement required HWI to supply
equipment for the project.

          The turnkey agreement required Watkins
to substantially complete the project by January 2000.  Because the production
line was not substantially completed several months after this deadline, Holcim
terminated the contract with Watkins.  Pursuant to an arbitration clause in the
turnkey agreement, Holcim filed a claim with the American Arbitration
Association against Watkins, seeking repair costs and liquidated damages.  Watkins
filed a counterclaim against Holcim for breach of the turnkey agreement and a
third-party claim against HWI pursuant to an arbitration clause in a purchase agreement
between Watkins and HWI.

          Watkins’s claim against HWI alleged
design, construction, and management failures.  HWI counterclaimed against Watkins
for breach of the purchase agreement.  In this counterclaim, HWI alleged that because
of Watkins’s failure to pay HWI the amounts due and owning under the purchase agreement,
it had filed a lien against Holcim’s property.

          The Arbitration Panel asked for
Holcim’s position on HWI’s joinder as a party to the arbitration.  Holcim objected
that HWI was not a necessary party for arbitration of the claims between Holcim
and Watkins.  Holcim stated that its claim was solely against Watkins for
breach of its contractual obligations, and that Watkins’s desire to hold its
subcontractor liable for these deficiencies had little relevance to Holcim’s
claim against Watkins.  However, Holcim agreed to allow Watkins to pursue its
third party claim against HWI, provided that the Arbitration Panel bifurcated the
proceedings with the first phase addressing the claims between Holcim and
Watkins and the second phase addressing the claims between Watkins and HWI.

          HWI filed a Statement of Claims and
Damages in which it specified the amount of damages sought from Watkins and
asserted for the first time a claim against Holcim for trapped funds.  HWI alleged
that Holcim was required to withhold sufficient funds from its payment to Watkins
to satisfy HWI’s claims and that Holcim had in fact withheld these funds  HWI
asked that the Arbitration Panel order Holcim to pay these funds directly to
HWI and not to or through Watkins.  HWI stated that, aside from the claim to trapped
funds and the lien, it had no other claims against Holcim.  HWI never named Holcim
as a defendant.

          The Arbitration Panel entered an order
requiring bifurcated proceedings with the first phase addressing the disputes
between Holcim and Watkins and the second phase addressing the disputes among Holcim,
Watkins, and HWI.

          At the conclusion of the first phase,
the Arbitration Panel found that Watkins did not substantially complete the
project and that Holcim was entitled to recover liquidated damages and costs
totaling $4,876,859.  The Panel also found that Watkins’s breach of the turnkey
agreement was not material and that Watkins was entitled to recover the
contract balance of $7,560,730, less Holcim’s damages, leaving Watkins a net
recovery of $2,683,871.

            Holcim then filed a motion to bar
HWI’s claims which were to be addressed in the second phase of arbitration. 
Holcim contended that HWI’s claims should be denied because: (1) there was no arbitration
agreement between Holcim and HWI, (2) Holcim was never named as a defendant and
had no opportunity to file an answer, and (3) a court of law is the proper
forum in which to decide whether a particular claim is subject to arbitration. 
The panel did not immediately respond to Holcim’s objections, and in the
interim Watkins filed for bankruptcy.

          The panel later overruled Holcim’s
objections, finding that it had jurisdiction to decide HWI’s claims against
Holcim.  At the conclusion of the second phase, HWI raised new claims against
Holcim, including breach of contract and trust fund theories.  Holcim objected
to the introduction of these new claims and renewed its objection to the panel’s
jurisdiction to decide these issues because of the lack of an arbitration agreement
between Holcim and HWI.

          After the panel overruled Holcim’s
objections, Holcim sought a temporary restraining order and an injunction in district
court because of the lack of an arbitration agreement between Holcim and HWI.  The
court denied Holcim’s motion.

          The Panel then issued its final award. 
It concluded that Watkins was liable to HWI for the net contract balance of
$5,495,061.  The panel awarded HWI $27,512 for its claims against Holcim and
imposed a constructive trust for the benefit of HWI on the $2,683,871 Holcim owed
Watkins.  The panel directed Holcim to pay this amount directly to HWI and determined
that payment of such funds would extinguish Holcim’s debt to Watkins.  The panel
also found that the contractual obligations between Holcim and HWI were
extensive and that Holcim was jointly and severally liable with Watkins to HWI for
the contractual retainage fee, which amounted to $4,931,539 of the net contract
balance.  The panel found that this amount due to HWI was not subject to
set-off or netting.

          Before the panel issued its final
award, HWI filed suit in district court naming Holcim and Watkins as
defendants.  After the final award issued, HWI moved for the district court to
confirm the award.  Holcim filed another suit in district court naming HWI and
Watkins as defendants.  Holcim requested that the court vacate the award
between Holcim and HWI on the grounds that there was no arbitration agreement.

          The trial court heard both cases and
confirmed the arbitration award.  Holcim filed an interlocutory appeal in both
cases.

Interlocutory Appeal or Mandamus

          We must first decide whether an
interlocutory appeal or a mandamus petition is the appropriate vehicle for the
relief sought by Holcim.  It is undisputed that the Federal Arbitration Act (FAA)
governed the parties’ arbitration proceedings.  “When Texas courts confront
procedural issues involving a case subject to the FAA, however, Texas procedural rules apply instead of federal rules.”  J.D. Edwards World Solutions Co.
v. Estes, Inc., 91 S.W.3d 836, 839 (Tex. App.—Fort Worth 2002, pet. denied)
(citing Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding)).

          Section 171.098(a) of the Civil
Practice and Remedies Code[1] provides:

(a)      A party may appeal a judgment or decree
entered under this chapter or an order:

 

(1) denying an application to compel arbitration
made under Section 171.021;

 

(2) granting an application to stay arbitration
made under Section 171.023;

 

          (3) confirming or denying confirmation
of an award;

 

          (4) modifying or correcting an award;
or

 

          (5) vacating an award without
directing a rehearing.

          

Tex. Civ. Prac. &
Rem. Code Ann. § 171.098(a) (Vernon
2005).  Thus, a party seeking review of an order that confirms or denies an
arbitration award may do so by an interlocutory appeal.  See id. §
171.098(a)(3); J.D. Edwards World Solutions, 91 S.W.3d at 839.  Because Holcim
is appealing from an order confirming an arbitration award, review by
interlocutory appeal is appropriate.[2]

Timeliness of Petition to Vacate

          HWI argues that both the trial court
and this Court are without jurisdiction to consider Holcim’s petition to vacate
the arbitration award because Holcim did not serve its petition on HWI within
three months after the arbitration panel delivered its award.  Thus, HWI
contends that the trial court’s decision to uphold the arbitration panel’s
award should not be disturbed.

          Holcim responds that HWI is barred
from raising this contention on appeal because it did not file a separate
notice of appeal.  See Tex. R.
App. P. 25.1(c) (“A party who seeks to alter the trial court’s judgment or
other appealable order must file a notice of appeal.”).  However, because HWI
presents this as a jurisdictional issue, it may be raised for the first time on
appeal.  See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser, 140
S.W.3d 351, 358 (Tex. 2004).  Moreover, because HWI does not seek to alter the
trial court’s judgment, a separate notice of appeal was not required.[3] 
See Tex. R. App. P. 25.1(c);
Ash v. Hack Branch Distrib. Co., 54 S.W.3d 401, 409 n.2 (Tex. App.—Waco
2001, pet. denied).

          Section 12 of the FAA provides in
pertinent part that “[n]otice of a motion to vacate, modify, or correct an
award must be served upon the adverse party or his attorney within three months
after the award is filed or delivered.”  9 U.S.C.A. § 12 (West 1999).  HWI
contends that this is a jurisdictional requirement.  However, section 12 has been
consistently treated as a statute of limitations rather than a jurisdictional
prerequisite.  See, e.g., Smith v. J-Hite, Inc., 127 S.W.3d 837, 841
(Tex. App.—Eastland 2003, no pet.); Eurocapital Group, Ltd. v. Goldman Sachs
& Co., 17 S.W.3d 426, 430-31 (Tex. App.—Houston [1st Dist.] 2000, no
pet.); see also Brown v. Witco Corp., 340 F.3d 209, 218 n.8 (5th Cir. 2003).

          The arbitration panel transmitted the
award to the parties by facsimile on March 2, 2004 and placed it in the mail on
March 3.  Holcim served its petition to vacate on HWI on June 3.

          The crux of this issue is whether the
award is to be considered “delivered” on the date it was faxed to the parties,
on the date it was placed in the mail, or on the date the mailed award was
received.

          The applicable version of Rule 46 of
the Construction Industry Arbitration Rules promulgated by the American
Arbitration Association provides:

Parties shall accept as legal delivery of the
award the placing of the award or a true copy thereof in the mail addressed to a
party or its representative at the last known address, personal service of the
award, or the filing of the award in any other manner that is permitted by law.

 

Am. Arbitration Ass’n,
Constr. Indus. Dispute Resolution Procedures R-46 (eff. Jan., 1, 1999) (amended 2001), http:// www.adr.org/sp.asp?id=22184.[4]

          Courts have generally accepted the
date a party receives the arbitration panel’s award in the mail as the date of
“delivery” for purposes of section 12.  See Smith v. Shell Chem. Co.,
333 F. Supp. 2d 579, 585 (M.D. La. 2004); Eagle Energy, Inc. v. Dist. 17,
United Mine Workers of Am., 177 F.R.D. 357, 358 (S.D. W. Va. 1998); Smith,
127 S.W.3d at 842.

          Because Holcim served its petition on
HWI within three months after the date the arbitration panel mailed its
decision to the parties, Holcim’s petition was timely.  Id.

Holcim’s Failure to Apply For a Stay

          HWI next contends that Holcim cannot
dispute the existence of an arbitration agreement because it failed to apply
for a stay under section 171.023 of the TAA.  See Tex. Civ. Prac. & Rem. Code Ann. §
171.023 (Vernon 2005).

          Section[5]
171.088(a)(4) states that a court “shall vacate” an arbitration award if “there
was no agreement to arbitrate, the issue was not adversely determined in a
proceeding under Subchapter B, and the party did not participate in the
arbitration hearing without raising the objection.”  Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4) (Vernon
2005).  Section 171.023 (which is found in Subchapter B) states that “[a] court
may stay an arbitration commenced or threatened on application and a showing
that there is not an agreement to arbitrate.”  Tex. Civ. Prac. & Rem. Code Ann. § 171.023(a).

          Section 171.088(a)(4) on its face does
not require a party to seek a stay.  Rather, it provides that, if a party
chooses to file a stay application and the court finds that there is an
agreement to arbitrate, then that party cannot later raise the lack of an
arbitration agreement as a ground to vacate an arbitration award.

          We have found no authority to support
the proposition that the filing of a stay application under section 171.023 is a
mandatory prerequisite to the filing of a motion to vacate an arbitration
award.  HWI cites Women’s Regional Healthcare, P.A. v. FemPartners of North
Texas, Inc. in support of its position.  175 S.W.3d 365 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  However, that court decided that a motion to vacate
was without merit because the appellant had not objected to the lack of an
arbitration agreement during the arbitration proceeding and not because the
appellant had failed to file a stay application.  See id. at 368-69.

          Prior to the second phase of the
arbitration proceedings, Holcim stated that HWI was not a necessary party under
the turnkey agreement because Holcim’s contract was with Watkins alone.  Holcim
also filed a motion to bar HWI’s claims on the basis that there was no
arbitration agreement between Holcim and HWI.  Thus, Holcim’s petition to
vacate the arbitration award is not barred because of Holcim’s failure to seek
a stay under section 171.023.

Estoppel

          HWI next contends that Holcim is
estopped to deny that HWI’s claims lie within the scope of the arbitration
clause in the turnkey agreement because Holcim sought affirmative relief
against HWI in the arbitration proceedings.

          HWI cites Tanox, Inc. v. Akin,
Gump, Strauss, Hauer & Feld, L.L.P. to support its general estoppel
argument.  105 S.W.3d 244 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). 
In that case however, Tanox never denied the existence of the arbitration
agreement and “demanded” arbitration of the claims at issue, which it later
contended were beyond the scope of the arbitration agreement.  See id.,
105 S.W.3d at 267-68.

          Here however, before the commencement
of the second phase of the arbitration proceedings, Holcim filed a motion to
bar consideration of HWI’s claims because of the lack of an arbitration
agreement between them.  Holcim participated in the arbitration process after
filing this written “objection,” and the arbitration panel ultimately rejected
Holcim’s position on this issue.

          “[W]here a party objects to
arbitrability but nevertheless voluntarily participates in the arbitration
proceedings, waiver of the challenge to arbitral jurisdiction will not be
inferred.”  Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1510
(3rd Cir. 1994), aff’d, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985
(1995); accord Bridas S.A.P.I.C. v. Turkmenistan, 345 F.3d 347, 355 (5th
Cir. 2003).  Because Holcim initially objected to the arbitrability of HWI’s
claims before participating in the second phase of the arbitration proceedings,
Holcim is not estopped to deny that HWI’s claims lie within the scope of the
arbitration clause in the turnkey agreement.

Equitable Estoppel

          HWI also contends that,
even if it was not a party to the arbitration agreement between Holcim and
Watkins, Holcim was required to arbitrate under the doctrine of equitable estoppel.

          “A party that is not a signatory to an
arbitration agreement may enforce the agreement’s provisions if the
non-signatory ‘falls into an exception, recognized under general equitable or
contract law, that would allow such enforcement.’”  In re Merrill Lynch
Trust Co., FSB, 123 S.W.3d 549, 554-55 (Tex. App.—San Antonio 2003, orig.
proceeding) (quoting In re Mohamed, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding)).

          A non-signatory may compel arbitration
in two ways: (1) when “the nature of the underlying claims requires the
signatory to rely on the terms of the written agreement containing the
arbitration provision in asserting its claims against the nonsignatory”; and
(2)    “when the signatory to the contract containing an arbitration clause
raises allegations of substantially interdependent and concerted misconduct by
both the nonsignatory and one or more of the signatories to the contract.”  In
re McMillan, 66 S.W.3d 477, 482 (Tex. App.—Dallas 2001, orig. proceeding).

          HWI argues that Watkins, a signatory
to the arbitration agreement with Holcim, alleged claims involving interdependent
and concerted misconduct on the part of both Holcim and HWI.  HWI points to
Watkins’s claim that Holcim breached the turnkey agreement because it excluded
Watkins in its communications with HWI concerning design changes and the
resizing and relocation of equipment.

          However, we hold that equitable
estoppel does not apply because there are two separate claims based upon two
separate agreements, each of which contained different arbitration provisions. 
In Watkins’s counterclaim against Holcim, Watkins alleges that Holcim breached
the turnkey agreement between Watkins and Holcim.  Watkins’s third-party claim
against HWI alleges HWI breached the purchase agreement between Watkins and
HWI.  Watkins’s claims against HWI arise solely under the purchase agreement
and not under the turnkey agreement.  See Woodhaven Homes, Inc. v. Alford,
143 S.W.3d 202, 205-06 (Tex. App.—Dallas 2004, no pet.); see also McMillan,
66 S.W.3d at 482-83.  Accordingly, we conclude that equitable estoppel does not
preclude Holcim from objecting to the arbitrability of HWI’s claims.

Existence of Arbitration Agreement Between
Holcim and HWI

          In general, a party seeking to compel
arbitration under the FAA must establish that: (1) there is a valid arbitration
agreement, and (2) the claims raised fall within that agreement’s scope. 
Doubts regarding an agreement’s scope are resolved in favor of
arbitration because there is a presumption favoring agreements to arbitrate
under the FAA.  However, “the presumption arises only after the party seeking
to compel arbitration proves that a valid arbitration agreement exists,”
because “the purpose of the FAA was to make arbitration agreements as
enforceable as other contracts, not more so.”

   

In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737-38 (Tex. 2005) (orig.
proceeding) (first quotation from J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003)) (second quotation from Bridas S.A.P.I.C.,
345 F.3d at 354 n.4) (other citations omitted).  Under the FAA, principles of
state contract law determine whether there is a valid agreement to arbitrate.  Id. at 738 (citing First Options of Chicago, 514 U.S. at 944, 115 S. Ct. at 1924).

          “An arbitration clause is interpreted
under contract principles and its language will be enforced according to its
plain meaning unless that would defeat the parties’ intent.”  In re C.A.K.,
155 S.W.3d 554, 559 (Tex. App.—San Antonio 2004, pet. denied).  “If the written
instrument is so worded that it can be given a certain or definite legal
meaning or interpretation, then it is not ambiguous and the court will construe
the contract as a matter of law.”  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  “An ambiguity exists only if the contract language is susceptible to two or
more reasonable interpretations.”  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003).  The language in a contract is to be given its
plain grammatical meaning unless doing so would defeat the parties’ intent.  DeWitt County Elec. Coop., Inc., v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).  We
presume that the parties intended every clause to have an effect.  Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).

          The only arbitration agreement to
which Holcim is a party is the turnkey agreement between Holcim and Watkins. 
Holcim argues that this agreement does not permit compelled arbitration between
Holcim and one of Watkins’s subcontractors.

          HWI responds that
consolidation provisions included in the turnkey agreement show that the turnkey
agreement and its arbitration clause were meant to include all claims and
disputes between HWI and Holcim.  HWI argues that the contract documents show
that the planning, designing, and construction of the project was a concerted
and joint undertaking between all three parties, and that the provisions of the
turnkey agreement were negotiated between all three parties.  HWI refers to
minutes of meetings between the three parties and a letter of intent from
Holcim that included all three parties as evidence that the turnkey agreement
was to apply to all three parties.  HWI also states that conditions in the turnkey
agreement recite contractual obligations between HWI and Holcim directly.

          The pertinent provisions of the
Turnkey Agreement are reproduced below:

          General
Condition 15.01C

 

All claims, disputes and other matters in
question between OWNER [Holcim] and DESIGN/BUILDER [Watkins] arising out of or
relating to the Contract Documents or the breach thereof . . . will be decided
by binding arbitration.

 

          General Condition 15.01.E

 

Except as provided in paragraph 15.01.F below,
no arbitration arising out of or relating to the Contract Documents shall
include by consolidation, joinder or in any other manner any other individual
or entity who is not a party to this contract unless:

 

1.  the inclusion of such other individual or
entity is necessary if complete relief is to be afforded among those who are
already parties to the arbitration, and

 

2.  such other individual or entity is substantially
involved in a question of law or fact which is common to those who are already
parties to the arbitration and which will arise in such proceedings, and

 

3.  the written consent of the other individual
or entity sought to be included and of Owner
and Design/builder has been
obtained for such inclusion, which consent shall make specific reference to
this paragraph; but no such consent shall constitute consent to arbitration of
any dispute not specifically described in such consent or to arbitration with
any party not specifically identified in such consent.

 

          General
Condition 15.01F.

 

Notwithstanding paragraph 15.01E, if a claim,
dispute or other matter in question between
OwNER and DESIGN/BUILDER involves the Work of a Subcontractor, Supplier
or Engineer either Owner or design/builder may join such entity as
a party to the arbitration between owner
and design/builder hereunder.  Design/builder shall include in all
subcontracts required by paragraph 6.05.D a specific provision whereby the
Subcontractor consents to being joined in an arbitration between owner and design/builder involving the Work of such Subcontractor. 
Nothing in this paragraph 15.01.F nor in the provision of such subcontract consenting
to joinder shall create any claim, right or cause of action in favor of
Subcontractor, Supplier or Engineer against Owner.

 

          Supplementary
Condition 15.0(2)

 

Multiparty Proceeding.  The parties agree that all parties necessary
to resolve a claim shall be parties to the same mediation or arbitration
proceeding.  Design/builder shall
include appropriate similar provisions in all other contracts and subcontracts
relating to the Work to provide for arbitration of disputes in accordance with
the provision of Exhibit GC-A and consolidation of arbitration.

 

          The turnkey agreement does allow the
consolidation of claims between necessary parties and subcontractors.  However,
this right of consolidation does not subsequently confer a right to a
non-signatory subcontractor like HWI to compel Holcim into arbitration.  The
plain language of the contract allows the joinder of a third party into
arbitration when consent is obtained from the third party, Holcim, and
Watkins.  However, the agreement states that “no such consent shall constitute
consent to arbitration of any dispute not specifically described in such
consent.”  Although Holcim consented to allow Watkins to bring HWI into the
arbitration proceedings, it did not consent to the arbitration of claims between
HWI and itself.  

          The turnkey agreement contemplates
multiparty proceedings and requires Watkins to include similar arbitration
provisions in its contracts with subcontractors.  However, the turnkey agreement
specifies that the inclusion of such arbitration provisions in contracts with
subcontractors does not “create any claim, right or cause of action in favor of
Subcontractor, Supplier or Engineer against Owner.” 
Thus, the turnkey agreement explicitly provides that the arbitration provision
in Watkins’s contract with HWI does not confer additional rights “in favor of [HWI]
against [Holcim].”

          Holcim relies on the Fifth Circuit’s
decision in Del E. Webb Construction v. Richardson Hospital Authority to
support its claim that HWI could not compel arbitration of its claims against
Holcim under Holcim’s arbitration agreement with Watkins.  823 F.2d 145 (5th
Cir. 1987), overruled on other grounds by Green Tree Fin. Corp. v. Bazzle,
539 U.S. 444, 452-53, 123 S. Ct. 2402, 2407, 156 L. Ed. 2d 414 (2003) (plurality
opinion); see also Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations
Personnel of Tex., Inc., 343 F.3d 355, 363 (5th Cir. 2003).[6]

          In Del E. Webb Construction, an
owner had an agreement with a contractor and a separate agreement with an
architect.  823 F.2d at 146-47.  Both contracts contained joinder provisions
and arbitration clauses.  The contractor attempted to compel arbitration
between the architect and itself, relying on the joinder provisions in the
contract between the owner and the contractor.  Id. at 148.

          The Fifth Circuit held that the
contractor could not compel arbitration with the architect because there was no
arbitration agreement between them.

          We agree that [the architect] could
not be compelled to arbitrate under the Owner-Contractor contract.  But [the
contractor] could compel the [owner] to arbitrate under the arbitration clause
in the Owner-Contractor contract, and the [owner] could compel [the architect]
to arbitrate under the arbitration clause in the Owner-Architect contract. 
Nevertheless, arbitration of [the architect’s] counterclaim against the
contractor was improper.  [The architect] and [the contractor] have not agreed
to arbitrate disputes between them.

 

          Undoubtedly, the district court was
concerned, as are we, about the potential for piecemeal litigation.  But as the
Supreme Court explained in Dean Witter Reynolds v. Byrd, 470 U.S. 213, 105 S. Ct. 1238, 1242-43, 84 L. Ed. 2d 158 (1985):

 

The preeminent concern of Congress in passing
the [Federal Arbitration] Act was to enforce private agreements into which
parties had entered, and that concern requires that we rigorously enforce
agreements to arbitrate, even if the result is “piecemeal” litigation, at least
absent a countervailing policy manifested in another federal statute.

 

Id. at 148.

          HWI distinguishes Del E. Webb
Construction on the basis of HWI’s assertion that there are not separate
agreements here, but a tripartite contractual relationship among HWI, Watkins,
and Holcim which cause contractual obligations to flow among all parties
involved.  However, in construction projects of this nature there will be
numerous obligations and negotiations flowing among everyone involved in the
project.  These dealings and relationships do not in and of themselves give
rise to an agreement to arbitrate or necessarily imply a contractual
relationship.

          As the Texas Supreme Court has
explained:

The work to be performed under a second-tier
subcontract will inherently be related to and, to a certain extent, defined by
contracts higher in the chain.  If this were a sufficient basis for binding a
non-signatory subcontractor, arbitration agreements would become easier to
enforce than other contracts, counter to the FAA’s purpose.

 

Kellogg Brown & Root, 166 S.W.3d at 740 (citation omitted).

          The plain language of the turnkey
agreement evidences the intent of Holcim to arbitrate with Watkins but does not
confer on HWI a right to compel arbitration of its claims against Holcim. 
Accordingly, there is no arbitration agreement between HWI and Holcim. 
Therefore, we sustain Holcim’s first issue.

          Because we have sustained
Holcim’s first issue, we need not address the remainder of its issues.  We
reverse the judgment and remand this cause for further proceedings consistent
with this opinion.

 

 

                                                                   FELIPE
REYNA

                                                                   Justice

Before Chief Justice
Gray,

          Justice
Vance, and

          Justice Reyna

          (Chief
Justice Gray concurring and dissenting)

Reversed and remanded

Opinion delivered and
filed October 4, 2006

[CV06]









[1]
          The Texas statutes governing
arbitration of disputes (commonly referred to as the Texas Arbitration Act) are
found in Chapter 171 of the Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. §§
171.001-171.098 (Vernon 2005).  Conversely, the FAA, which applies to “any maritime
transaction or a contract evidencing a transaction involving commerce,” is
found in title 9 of the United States Code.  See 9 U.S.C.A. § 2 (West
1999).  “The factors that determine whether the FAA preempts the TAA are
whether (1) the agreement is in writing, (2) it involves interstate commerce,
(3) it can withstand scrutiny under traditional contract defenses, and (4)
state law affects the enforceability of the agreement.”  In re Nexion Health
at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding).





[2]
          Some provisions
of section 171.098(a) allow for an interlocutory appeal in cases governed by
either the FAA or the TAA.  See Tex. Civ. Prac. & Rem. Code Ann. §
171.098(a)(3),(4),(5).  Conversely, subsections (1) & (2) permit an
interlocutory appeal only in proceedings governed by the TAA.  Id. § 171.098(a)(1),(2).  Therefore, for parties challenging the granting of
an application to stay arbitration or the denial of an application to compel
arbitration in proceedings governed by the FAA, mandamus is the appropriate
remedy.  See In re J.D. Edwards World Solutions Co., 87 S.W.3d 546, 551
(Tex. 2002) (orig. proceeding); Brooks v. Pep Boys Automotive Supercenters,
104 S.W.3d 656, 660-61 (Tex. App.—Houston [1st Dist.] 2003, no pet.); J.D.
Edwards World Solutions Co. v. Estes, Inc., 91 S.W.3d 836, 839 (Tex.
App.—Fort Worth 2002, pet. denied).





[3]
          In theory at least, HWI should
be seeking an order vacating the trial court’s judgment and dismissing Holcim’s
claims for want of jurisdiction.  See, e.g., Brooks v. Northglen Ass’n,
141 S.W.3d 158, 172 (Tex. 2004).





[4]
          Since July 2001, the American
Arbitration Association’s rules have provided for delivery by “personal or
electronic service.”  See Am.
Arbitration Ass’n, Constr. Indus. Dispute Resolution Procedures R-48
(eff. July 1, 2001), http://www.adr.org/sp.asp?id=22180 (current version at Am. Arbitration Ass’n, Constr. Indus.
Arbitration Rules, R-46 (eff. Sept. 15, 2005), http://www.adr.org/sp.asp?id=22004).

 





[5]
          The term “section” as used
hereinafter refers to a section of Chapter 171 of the Civil Practice &
Remedies Code (the TAA), unless otherwise indicated.





[6]
          The Fifth Circuit explained in Pedcor
Management Co. that the Supreme Court’s plurality opinion in Green Tree
Financial Corp. “effectively overruled” the holding in Del E.
Webb Construction that a court rather than an arbitrator should determine
whether the parties have agreed to consolidate separate arbitration
proceedings.  See Pedcor Mgt. Co., Inc. Welfare Benefit Plan v. Nations
Personnel of Tex., Inc., 343 F.3d 355, 363 (5th Cir. 2003).