Edward SMITH

v.

**SHELL CHEMICAL COMPANY, et al.**

and

**Edward Smith**

v.

**American Arbitration Association, Inc., Shell Chemical Plant, and Burns International Security**

**Nos. CIV.A. 02–603–B–M1, CIV.A. 04–284–B.**

United States District Court, M.D. Louisiana.

Aug. 26, 2004.

Gregory S. Johnson, Bullock & Johnson, Baton Rouge, LA, for Plaintiff.

Edward Smith, Baton Rouge, LA, pro se.

Thomas W. Darling, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, LA, Kathleen F. Hobson, New Orleans, LA, Danny G. Shaw, Mark W. Mercante, Shaw Norton, L.L.P., Mandeville, LA, for Defendants.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on the Motion to Dismiss filed by Shell Chemical Plant ("Shell") and Burns International Security ("Burns")[1], and the Motion to Dismiss filed by the American Arbitration Association.[2] For the reasons which follow, the motions are granted, and the case is dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. Factual Background

The plaintiff, who was directly employed by Burns, filed a lawsuit in Civil Action 02–603 in the Middle District of Louisiana after being released from his position as a night patrol security officer for Shell Chemical Company, alleging that he was terminated because of his race. The plaintiff alleges that although the reason given for his release was due to budget cuts, plaintiff contends that this reason was a pretext for racial discrimination. On October 28, 2002, this Court issued a stay in Civil Action 02–603 pending arbitration proceedings and administratively closed the lawsuit against Shell and Burns.[3]

The plaintiff's claims against Shell and Burns were presented to an arbitrator chosen by both parties to settle this dispute. After reviewing the record, arbitrator Sid Moller issued a written ruling in favor of the defendants. Thereafter, the plaintiff not only filed the present lawsuit (Civil Action 04–484) against Shell and Burns, but also named the American Arbitration Association ("AAA"), seeking relief from judgment under Federal Rule of Civil Procedure 60(b)(3). The plaintiff's complaint includes allegations that the arbitrator mishandled his motion for contempt relating to discovery and denied him the right to a fair hearing.

All defendants have moved to dismiss Civil Action 04–284. Shell and Burns contend that plaintiff has no cause of action under Rule 60(b)(3) as there is no judgment from which to obtain relief, and further contend that plaintiff failed to comply with the service requirements set forth under the Federal Arbitration Act. The

---

1. Rec. Doc. No. 14.

2. Rec. Doc. No. 17.

3. Rec. Doc. No. 17.

AAA moved to dismiss based on its assertion of arbitral immunity.

## II. Law and Analysis

### A. Motion to Dismiss

■ A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is viewed with disfavor and is rarely granted.[4] A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[5] In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[6] In ruling on such a motion, the court cannot look beyond the face of the pleadings.[7] The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff.[8] A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal.[9]

■ Dismissal is warranted if a plaintiff has (1) been given the opportunity to plead his best case, (2) made specific and detailed allegations constituting his best case, and (3) still fails to state a claim.[10]

### B. Plaintiff has no cause of action under Rule 60(b).

■ The plaintiff seeks relief pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure, which states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ...(3) fraud (whether heretofore denominated as intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party..." Considering that the arbitration award is not a "judgment" as contemplated in Rule 60(b)(3), the plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6).

Burns and Shell correctly note that a final judgment has never been rendered by any district court regarding the arbitration award at issue in this litigation. Further, federal case law provides that the Federal Rules of Civil Procedure were "never designed to apply to proceedings in other than the United States District Courts."[11]

The defendants contend, and the Court agrees, that the relief sought by plaintiff is actually a request to vacate the arbitration

---

4. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).

5. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

6. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

7. *Baker*, 75 F.3d at 196; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000).

8. *Lowrey*, 117 F.3d at 247.

9. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

10. *See Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir.1986) (recognizing that dismissal is required if a plaintiff has had fair opportunity to make his case, but has failed); *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir.1985) (assuming that the specific allegations of the amended complaint constitute the plaintiff's best case).

11. *Washington–Baltimore Newspaper Guild, Local 35 v. The Washington Post Company*, 442 F.2d 1234, 1239 (D.C.Cir.1971).

award, and such relief is governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et. seq.* Rule 81(a)(3) of the Federal Rules of Civil Procedure specifically addresses the application of the federal rules to arbitration proceedings:

In proceedings under Title 9, U.S.C., relating to arbitration, or under the Act of May 20, 1926, ch. 347, § 9 (44 Stat. 585), U.S.C., Title 45 § 159, relating to boards of arbitration of railway labor disputes, **these rules apply only to the extent that matters of procedure are not provided for in those statutes.** These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings. (Emphasis added).

The United States Fourth Circuit applied this rule in *Deiulemar Compagnia Di Navigazione v. M/V Allegra,*[12] in refusing to enforce the federal discovery rules in an arbitration proceeding. The *Deiulemar* court stated: "[u]nder Rule 81(a)(3), 'the Federal Rules fill in only those procedural gaps left open by the FAA.' "[13]

Similarly, in *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*[14] the United States District Court for the Southern District of New York held that Rule 60 was not available to the plaintiffs to overturn an arbitration award, relying on its previous decision in *Cook Chocolate Co. v. Salomon Inc.*[15] The *Hough* court relied on the following language in *Cook:*

Under Rule 81(a)(3), the rules are extended to cover arbitration proceedings "only to the extent that matters of procedure are not provided for in" the Federal Arbitration Act, 9 U.S.C. Because a motion to vacate an award falls within the scope of "matters of procedure," and because 9 U.S.C. § 9 explicitly provides for this relief, Rule 60(b) is unavailable ... in contesting the arbitrators' decision.[16]

Thus, the Court finds that the sought relief by plaintiff is not available under Rule 60(b) of the Federal Rule of Civil Procedure. Because the plaintiff's action should have been brought under the FAA, the Court will address plaintiff's action as a motion to vacate the arbitration award pursuant to the Act.

**C. Plaintiff failed to comply with the requirements of the Federal Arbitration Act.**

 The Federal Arbitration Act ("FAA") provides the exclusive remedy for challenging misconduct in the administration of an arbitration award.[17] Since the FAA is the proper mechanism for the relief sought by the plaintiff, the Court shall address plaintiff's claim as a motion to vacate the arbitration award under the relevant sections of the FAA for the purposes of resolving the pending motion.

---

12. 198 F.3d 473 (4th Cir.1999).

13. *Id.,* at 482, *quoting Champ v. Siegel Trading Co.,* 55 F.3d 269, 276 (7th Cir.1995).

14. 757 F.Supp. 283 (S.D.N.Y.1991).

15. 748 F.Supp. 122 (S.D.N.Y.1990). (The *Cook* Court ruled on a motion to overturn an arbitration award.)

16. *Hough,* 757 F.Supp. at 290, *quoting Cook,* 748 F.Supp. at 125.

17. *Jason v. American Arbitration Association,* 2002 WL 1059005, at *2 (E.D.La. May 23, 2002), *citing Corey v. N.Y.S.E.,* 691 F.2d 1205, 1212 (6th Cir.1982).

A motion to vacate an arbitration award is governed by 9 U.S.C. § 10, which states as follows:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

. . . . .

■ It is clear that the relief which plaintiff seeks in Civil Action 04–284 is contemplated in the above section of the FAA. However, even if plaintiff had properly brought his lawsuit pursuant to this section of the FAA, plaintiff was also required to comply with the requirements of 9 U.S.C. § 12 with regard to notice and service of process. Section 12 provides, in pertinent part, as follows:

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney **within three months after the award is filed or delivered.** If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service and notice of motion in an action in the same court. . . . (Emphasis added).

Section 12 clearly requires that a notice to vacate under this Act be served upon the adverse party or his attorney "within three months after the award is filed or delivered." In this case, even if the Court would consider the filing of plaintiff's complaint as sufficient to constitute notice of a motion to vacate, the plaintiff failed to serve the adverse parties in this matter within the three month time period allowed under the Act.

The Fifth Circuit Court of Appeals' decision in *Hudson v. American Arbitration Association* [18] supports the Court's decision. In *Hudson,* the plaintiff submitted his wrongful termination and defamation claims to arbitration under an agreement with his employer. The arbitrator returned a decision unfavorable to the plaintiff on April 12, 2002, and plaintiff appealed that decision to the district court on February 26, 2003.[19]

The court affirmed the district court's dismissal pursuant to Rule 12(b)(6) because "the relevant statute of limitations provides only three months to appeal from arbitration orders. 9 U.S.C. § 12. As Hudson was appealing an arbitration order rather than a district court order, the district court properly applied § 12 rather than Fed.R.Civ.P. 60(b)." [20]

---

18. 101 Fed.Appx. 947, 2004 WL 1367591 (5th Cir.2004).

19. *Id.,* at 101 Fed.Appx. 947, 948, 2004 WL 1367591, *1.

20. *Id.*

■ The arbitration award in the instant matter was signed on January 26, 2004, and was delivered to the plaintiff sometime prior to February 10, 2004, as reflected by the plaintiff's letter [21] to Ms. Molly Bargenquest of the American Arbitration Association wherein the plaintiff requested review of the arbitration award and referenced the award rendered by Sid Moller.

Plaintiff had three months from February 10, 2004, at the latest, to serve notice of his intention to vacate the arbitration award upon the adverse parties. Thus, the adverse parties had to be served by May 10, 2004. The record reflects that Shell was not served until May 13, 2004, and Burns was not served until May 25, 2004.

It is clear to the Court that, even if the Court accepts plaintiff's motion as a motion to vacate the arbitration award pursuant to the FAA, plaintiff has failed to timely serve the adverse parties in accordance with the provisions of the FAA. Since plaintiff's service upon the defendants was untimely, plaintiff's motion for relief from judgment, which the court also treated as a motion to vacate pursuant to the FAA, shall be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. The American Arbitration Association and the theory of arbitral immunity

The American Arbitration Association ("AAA") moved to dismiss plaintiff's claims against it based on the theory of arbitral immunity. The AAA argues that arbitral immunity immunizes such arbitral organizations as itself from civil liability for acts that fall within the scope of the arbitration process. In the plaintiff's opposition to the AAA's motion to dismiss, plaintiff cited the United States Supreme Court decision of *Mireles v. Waco* [22] in support of his contention that the arbitrator was acting in a "nonjudicial" capacity. Plaintiff bases this conclusion upon alleged fraudulent and biased actions taken by the arbitrator against the plaintiff in the administration of the arbitration proceeding, which would fall outside the scope of arbitral immunity.

### 1. Qualified Immunity

■ The United States Supreme Court has consistently held that "government officials are entitled to some form of immunity from suits for damages." [23] Generally, these officials receive only a qualified immunity, which protects them from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." [24]

■ Qualified immunity attempts to balance the need to protect officials from harassing and often frivolous lawsuits, with the need to provide relief to those subjected to an abuse of office.[25] Requiring the official to vindicate his actions through a trial costs not only the defendant officials, but also society as a whole, by diverting the official's attention from his duties, deterring citizens from accepting public of-

**21.** *See,* Rec. Doc. No. 15, Exhibit 6.

**22.** 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

**23.** *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982).

**24.** *Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc.,* 757 F.2d 676, 686 (5th Cir.1985), *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

**25.** *Id.,* 757 F.2d 676 (5th Cir.1985), *citing Harlow,* 457 U.S. 800, 102 S.Ct. at 2736, 73 L.Ed.2d 396.

fice, and burdening an already overcrowded and expensive judicial system.[26]

A court must examine an official's behavior to see if he was acting in a capacity for which he possessed discretionary authority. As to actions which arguably fall within the range of permissible actions, absolute immunity protects the official from civil liability for those actions. If, however, the official fails to posit a valid function of office calling for his action, then the act falls outside the scope of his authority, and he must defend the claim.[27]

### 2. Applicability of *Mireles v. Waco*

The court must first address plaintiff's misplaced reliance on the *Mireles* decision. In *Mireles*, an attorney brought an action against a state court judge alleging that the judge authorized the use of "excessive force" against the attorney. The attorney alleged that after he failed to appear for the initial call of the Judge's calendar, the Judge ordered the police officers to "forcibly and with excessive force seize and bring plaintiff into his courtroom." [28]

The district court dismissed the action for failure to state a claim, but the Ninth Circuit Court of Appeals reversed and remanded. The United States Supreme Court granted certiorari, and ultimately held that the judge was judicially immune from suit under the circumstances of the case. The Court noted that under this procedure, the Court has extended absolute immunity to a variety of government positions including the President, judges, prosecutors, legislators, and legislative aides acting in their legislative capacity.[29]

Before discussing the merits of the lawsuit, the *Mireles* Court stated as follows:

Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335, 347, 20 L.Ed. 646 (1972).[30]

The Supreme Court stated the following with regard to the history of official immunity:

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. . . .

Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.[31]

Further, the Court noted that the determination of whether an act by a judge is a "judicial" one is " 'whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial

---

26. *Id.,citing Harlow,* 457 U.S. 800, 102 S.Ct. at 2736, 73 L.Ed.2d 396.

27. *Id.,* at 688.

28. *Mireles,* 502 U.S. at 10, 112 S.Ct. at 287.

29. *Id.* (Citations omitted).

30. *Id.*

31. *Id.,* at 11–12, 112 S.Ct. at 288.

capacity.'"[32] The Court found that, because the attorney was called into the courtroom for purposes of a pending case, he was dealing with Judge Mireles in the judge's judicial capacity. The Court noted that, "we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing the police officers to bring counsel in a pending case before the court."[33]

The plaintiff in the present matter apparently believes the *Mireles* decision supports his proposition that the arbitrator in this matter acted a "nonjudicial" capacity by allegedly acting fraudulently in his administration of the arbitration proceedings. Plaintiff further contends and that such "actions" remove the shield of arbitral immunity. However, as noted in the *Mireles* case, the arbitrator's act of ruling in favor of Burns and Shell, and taking whatever actions the arbitrator took in his capacity as arbitrator, fall squarely within the arbitrator's official function regardless of whether the plaintiff agreed with the arbitrator's actions or decision.

### 3. Applicability of Arbitral Immunity

In *Jason v. American Arbitration Association*,[34] the United States District Court for the Eastern District of Louisiana addressed a motion to dismiss by the AAA. The action arose out of the AAA's arbitral decision between the plaintiff and Halliburton, plaintiffs' employer at a refinery. The plaintiffs claimed that the AAA arbitrator, who issued the awards in favor of Halliburton, was biased in Halliburton's favor. Plaintiffs also argued that the AAA's failure to remove the arbitrator from the case considering plaintiffs' motion to recuse constituted fault and/or a breach of contract. The plaintiffs filed a Motion to Vacate Arbitration Award in state court before the arbitration award was issued, and the AAA timely removed this lawsuit to the Eastern District.[35]

The court noted that "[p]laintiffs' claims are an attempt to enforce civil liability for conduct of the arbitrator and/or the arbitration association AAA during the course and scope of the contractually agreed-upon arbitration proceedings."[36] The AAA asserted the doctrine of arbitral immunity as a shield to the arbitrators and the AAA.

Finding that the AAA was immune from suit under the doctrine of arbitral immunity, the court stated:

The doctrine of judicial immunity is applicable to the arbitration process and extends to associations such as the AAA. All of the federal courts of appeals that have considered the question have found that **arbitrators enjoy strict arbitral immunity.** Courts have also recognized that public policy strongly favors arbitration, analogizing to the principle of judicial immunity to mold the contours of the corresponding arbitral immunity to suit. The case law is clearly to the effect that **no cause of action can be asserted against an arbitrator based on the issuance of an unfavorable decision.**[37]

The *Jason* court also relied on the Seventh Circuit Court of Appeals decision in

**32.** *Id.*, at 12, 112 S.Ct. at 288, *quoting Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978).

**33.** *Id.*, at 13, 112 S.Ct. at 288–89.

**34.** 2002 WL 1059005 (E.D.La. May 23, 2002).

**35.** *Id.*, at *1..

**36.** *Id.*, at *2.

**37.** *Id.* (Emphasis added).

*Galuska v. New York Stock Exchange,*[38] quoting the *Galuska* court as follows:

> The doctrine of arbitral immunity is rooted in the doctrine of judicial immunity—because an arbitrator's role is considered the "functional equivalent" of a judge's role, courts have uniformly extended quasi-judicial immunity to individual arbitrators. The policies underlying arbitral immunity parallel those underlying judicial immunity—to protect decision makers from undue influence and to protect the integrity of the decision making process.
>
> \* \* \* \* \* \*
>
> Moreover, arbitral immunity attaches to "all acts within the scope of the arbitral process."[39]

Similarly, in *Hawkins v. National Association of Securities Dealers Inc.,*[40] the Fifth Circuit addressed an appeal by a plaintiff whose lawsuit against an arbitrator challenging an arbitration award was dismissed based on arbitral immunity. After plaintiff received an unfavorable arbitration decision, he instituted an action in a Texas state court naming the National Association of Securities Dealers ("NASD") as defendants. The plaintiff alleged that the NASD was biased against him, failed to properly administer the arbitration proceeding, and conspired with the employer to harm and deprive him of a fair arbitration.[41]

The Fifth Circuit upheld the district court's dismissal of the claims against the NASD, stating that, "[t]he NASD enjoys arbitral immunity from civil liability for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings."[42] In further support of this holding, the court noted that "[b]ecause the NASD is immune from civil liability arising from its actions taken in the course of conducting arbitration proceedings, Hawkins has failed to state a claim against the NASD."[43]

The *Hudson v. American Arbitration Association*[44] case is also relevant to this discussion. The Fifth Circuit held in *Hudson* that "[a]ny equal protection claims or claims of misdeeds by the American Arbitration Association are barred by arbitral immunity."[45]

## III. Conclusion

 For the reasons set forth above, the Court finds that plaintiff has failed to state a claim upon which relief may be granted under Rule 60(b) of the Federal Rules of Civil Procedure. The Court also finds that, considering plaintiff's motion for relief from judgment as a motion to vacate the arbitration award under the FAA, such motion was not timely served on the adverse parties in contravention of 9 U.S.C. § 12. Finally, the Court specifically finds that the arbitrator in this matter acted in his quasi-judicial capacity in the administration of this arbitration;

38. 210 F.3d 374 (7th Cir.2000).

39. *Jason,* at \*2, *quoting Galuska,* 210 F.3d 374 (citations omitted).

40. 149 F.3d 330 (5th Cir.1998).

41. *Id.,* at 331.

42. *Id.,* at 332, *citing Corey v. New York Stock Exch.,* 691 F.2d 1205, 1208–11 (6th Cir.1982); *cf. Austin Mun. Sec., Inc. v. National Ass'n of Sec. Dealers, Inc.,* 757 F.2d 676, 686–93 (5th Cir.1985).

43. *Id.*

44. 101 Fed. Appx. 947, 2004 WL 1367591 (5th Cir.2004).

45. *Id.,* at 948, 2004 WL 1367591, \*1, *citing Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.,* 149 F.3d at 332.

thus, both the arbitrator and the American Arbitration Association are immune from civil liability based on the doctrine of arbitral immunity.

Therefore, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Motion to Dismiss filed by Shell Chemical Plant and Burns International Security is granted,[46] and the Motion to Dismiss filed by the American Arbitration Association [47] is granted.

Judgment shall be entered dismissing Civil Action 02–603 and Civil Action 04–284 with prejudice.

IT IS SO ORDERED.

46. Rec. Doc. No. 14.

47. Rec. Doc. No. 17.