HOLCIM (TEXAS) LIMITED PART-
NERSHIP f/k/a Holman Texas Lim-
ited Partnership, Appellant,

v.

HUMBOLDT WEDAG, INC., Appellee.

Nos. 10–05–00152–CV, 10–05–00153–CV.

Court of Appeals of Texas,
Waco.

Oct. 4, 2006.

Rehearing Overruled Dec. 27, 2006.

O. Rey Rodriguez, Fulbright & Jaworski LLP, Dallas, Clay Hinds, Hinds & Willett, Waxahachie, Andrew G. Klevorn, Elmer Stahl Klevorn & Solberg LLP, Chicago, IL, for appellant.

Clay Lewis Jenkins, Jenkins & Jenkins, Waxahachie, Rex Davis, Sheehy, Lovelace & Mayfield PC, Waco, James K. Bidgood and Eugene Heady, Smith Currie & Hancock LLP, Atlanta, GA, Theodore W. Daniel, Jenkins & Gilchrist PC, Dallas, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Holcim (Texas) Limited Partnership fka Holman Texas Limited Partnership appeals the denial of its petition to vacate an arbitration award between Humboldt Wedag, Inc. ("HWI") and itself. Holcim contends in three issues that the court erred by (1) denying its petition because there was no arbitration agreement between Holcim and HWI; (2) denying its petition because the arbitration panel exceeded its authority by awarding relief based upon claims that were not submitted to it and beyond its jurisdiction; and (3) improperly modifying the arbitration award. Because we find that no arbitration agreement exists between Holcim and HWI, we will reverse and remand.

### Background

In September 1998, Holcim entered a turnkey agreement with Watkins for the

construction of a cement production line at Holcim's factory in Midlothian. The turnkey agreement required Watkins to provide a fully functional production line. Subsequently, Watkins entered an agreement with HWI as a subcontractor. This agreement required HWI to supply equipment for the project.

The turnkey agreement required Watkins to substantially complete the project by January 2000. Because the production line was not substantially completed several months after this deadline, Holcim terminated the contract with Watkins. Pursuant to an arbitration clause in the turnkey agreement, Holcim filed a claim with the American Arbitration Association against Watkins, seeking repair costs and liquidated damages. Watkins filed a counterclaim against Holcim for breach of the turnkey agreement and a third-party claim against HWI pursuant to an arbitration clause in a purchase agreement between Watkins and HWI.

Watkins's claim against HWI alleged design, construction, and management failures. HWI counterclaimed against Watkins for breach of the purchase agreement. In this counterclaim, HWI alleged that because of Watkins's failure to pay HWI the amounts due and owning under the purchase agreement, it had filed a lien against Holcim's property.

The Arbitration Panel asked for Holcim's position on HWI's joinder as a party to the arbitration. Holcim objected that HWI was not a necessary party for arbitration of the claims between Holcim and Watkins. Holcim stated that its claim was solely against Watkins for breach of its contractual obligations, and that Watkins's desire to hold its subcontractor liable for these deficiencies had little relevance to Holcim's claim against Watkins. However, Holcim agreed to allow Watkins to pursue its third party claim against HWI, provid-

ed that the Arbitration Panel bifurcated the proceedings with the first phase addressing the claims between Holcim and Watkins and the second phase addressing the claims between Watkins and HWI.

HWI filed a Statement of Claims and Damages in which it specified the amount of damages sought from Watkins and asserted for the first time a claim against Holcim for trapped funds. HWI alleged that Holcim was required to withhold sufficient funds from its payment to Watkins to satisfy HWI's claims and that Holcim had in fact withheld these funds HWI asked that the Arbitration Panel order Holcim to pay these funds directly to HWI and not to or through Watkins. HWI stated that, aside from the claim to trapped funds and the lien, it had no other claims against Holcim. HWI never named Holcim as a defendant.

The Arbitration Panel entered an order requiring bifurcated proceedings with the first phase addressing the disputes between Holcim and Watkins and the second phase addressing the disputes among Holcim, Watkins, and HWI.

At the conclusion of the first phase, the Arbitration Panel found that Watkins did not substantially complete the project and that Holcim was entitled to recover liquidated damages and costs totaling $4,876,859. The Panel also found that Watkins's breach of the turnkey agreement was not material and that Watkins was entitled to recover the contract balance of $7,560,730, less Holcim's damages, leaving Watkins a net recovery of $2,683,871.

Holcim then filed a motion to bar HWI's claims which were to be addressed in the second phase of arbitration. Holcim contended that HWI's claims should be denied because: (1) there was no arbitration agreement between Holcim and HWI, (2)

Holcim was never named as a defendant and had no opportunity to file an answer, and (3) a court of law is the proper forum in which to decide whether a particular claim is subject to arbitration. The panel did not immediately respond to Holcim's objections, and in the interim Watkins filed for bankruptcy.

The panel later overruled Holcim's objections, finding that it had jurisdiction to decide HWI's claims against Holcim. At the conclusion of the second phase, HWI raised new claims against Holcim, including breach of contract and trust fund theories. Holcim objected to the introduction of these new claims and renewed its objection to the panel's jurisdiction to decide these issues because of the lack of an arbitration agreement between Holcim and HWI.

After the panel overruled Holcim's objections, Holcim sought a temporary restraining order and an injunction in district court because of the lack of an arbitration agreement between Holcim and HWI. The court denied Holcim's motion.

The Panel then issued its final award. It concluded that Watkins was liable to HWI for the net contract balance of $5,495,061. The panel awarded HWI $27,512 for its claims against Holcim and imposed a constructive trust for the benefit of HWI on the $2,683,871 Holcim owed Watkins. The panel directed Holcim to pay this amount directly to HWI and determined that payment of such funds would extinguish Holcim's debt to Watkins. The panel also found that the contractual obligations between Holcim and HWI were extensive and that Holcim was jointly and severally liable with Watkins to HWI for the contractual retainage fee, which amounted to $4,931,539 of the net contract balance. The panel found that this amount due to HWI was not subject to set-off or netting.

Before the panel issued its final award, HWI filed suit in district court naming Holcim and Watkins as defendants. After the final award issued, HWI moved for the district court to confirm the award. Holcim filed another suit in district court naming HWI and Watkins as defendants. Holcim requested that the court vacate the award between Holcim and HWI on the grounds that there was no arbitration agreement.

The trial court heard both cases and confirmed the arbitration award. Holcim filed an interlocutory appeal in both cases.

**Interlocutory Appeal or Mandamus**

 We must first decide whether an interlocutory appeal or a mandamus petition is the appropriate vehicle for the relief sought by Holcim. It is undisputed that the Federal Arbitration Act (FAA) governed the parties' arbitration proceedings. "When Texas courts confront procedural issues involving a case subject to the FAA, however, Texas procedural rules apply instead of federal rules." *J.D. Edwards World Solutions Co. v. Estes, Inc.*, 91 S.W.3d 836, 839 (Tex.App.-Fort Worth 2002, pet. denied) (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding)).

 Section 171.098(a) of the Civil Practice and Remedies Code[1] provides:

1. The Texas statutes governing arbitration of disputes (commonly referred to as the Texas Arbitration Act) are found in Chapter 171 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–

171.098 (Vernon 2005). Conversely, the FAA, which applies to "any maritime transaction or a contract evidencing a transaction involving commerce," is found in title 9 of the United States Code. *See* 9 U.S.C.A. § 2 (West

(a) A party may appeal a judgment or decree entered under this chapter or an order:

(1) denying an application to compel arbitration made under Section 171.021;

(2) granting an application to stay arbitration made under Section 171.023;

(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or

(5) vacating an award without directing a rehearing.

Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a) (Vernon 2005). Thus, a party seeking review of an order that confirms or denies an arbitration award may do so by an interlocutory appeal. *See id.* § 171.098(a)(3); *J.D. Edwards World Solutions,* 91 S.W.3d at 839. Because Holcim is appealing from an order confirming an arbitration award, review by interlocutory appeal is appropriate.[2]

### Timeliness of Petition to Vacate

■ HWI argues that both the trial court and this Court are without jurisdiction to consider Holcim's petition to vacate the arbitration award because Holcim did not serve its petition on HWI within three months after the arbitration panel delivered its award. Thus, HWI contends that the trial court's decision to uphold the arbitration panel's award should not be disturbed.

Holcim responds that HWI is barred from raising this contention on appeal because it did not file a separate notice of appeal. *See* Tex.R.App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."). However, because HWI presents this as a jurisdictional issue, it may be raised for the first time on appeal. *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 358 (Tex. 2004). Moreover, because HWI does not seek to alter the trial court's judgment, a separate notice of appeal was not required.[3] *See* Tex.R.App. P. 25.1(c); *Ash v. Hack Branch Distrib. Co.,* 54 S.W.3d 401, 409 n. 2 (Tex.App.-Waco 2001, pet. denied).

Section 12 of the FAA provides in pertinent part that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C.A. § 12 (West 1999). HWI contends that this

---

1999). "The factors that determine whether the FAA preempts the TAA are whether (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects the enforceability of the agreement." *In re Nexion Health at Humble, Inc.,* 173 S.W.3d 67, 69 (Tex.2005) (orig. proceeding).

**2.** Some provisions of section 171.098(a) allow for an interlocutory appeal in cases governed by either the FAA or the TAA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(3), (4), (5). Conversely, subsections (1) & (2) permit an interlocutory appeal only in proceedings governed by the TAA. *Id.* § 171.098(a)(1), (2).

Therefore, for parties challenging the granting of an application to stay arbitration or the denial of an application to compel arbitration in proceedings governed by the FAA, mandamus is the appropriate remedy. *See In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 551 (Tex.2002) (orig. proceeding); *Brooks v. Pep Boys Automotive Supercenters,* 104 S.W.3d 656, 660–61 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *J.D. Edwards World Solutions Co. v. Estes, Inc.,* 91 S.W.3d 836, 839 (Tex. App.-Fort Worth 2002, pet. denied).

**3.** In theory at least, HWI should be seeking an order vacating the trial court's judgment and dismissing Holcim's claims for want of jurisdiction. *See, e.g., Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 172 (Tex.2004).

is a jurisdictional requirement. However, section 12 has been consistently treated as a statute of limitations rather than a jurisdictional prerequisite. *See, e.g., Smith v. J–Hite, Inc.,* 127 S.W.3d 837, 841 (Tex. App.-Eastland 2003, no pet.); *Eurocapital Group, Ltd. v. Goldman Sachs & Co.,* 17 S.W.3d 426, 430–31 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *see also Brown v. Witco Corp.,* 340 F.3d 209, 218 n. 8 (5th Cir.2003).

The arbitration panel transmitted the award to the parties by facsimile on March 2, 2004 and placed it in the mail on March 3. Holcim served its petition to vacate on HWI on June 3.

The crux of this issue is whether the award is to be considered "delivered" on the date it was faxed to the parties, on the date it was placed in the mail, or on the date the mailed award was received.

The applicable version of Rule 46 of the Construction Industry Arbitration Rules promulgated by the American Arbitration Association provides:

> Parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any other manner that is permitted by law.

Am. Arbitration Ass'n, Constr. Indus. Dispute Resolution Procedures R–46 (eff. Jan., 1, 1999) (amended 2001), http:// www. adr.org/sp.asp?id=22184.[4]

Courts have generally accepted the date a party receives the arbitration panel's award in the mail as the date of "delivery" for purposes of section 12. *See Smith v. Shell Chem. Co.,* 333 F.Supp.2d 579, 585 (M.D.La.2004); *Eagle Energy, Inc. v. Dist. 17, United Mine Workers of Am.,* 177 F.R.D. 357, 358 (S.D.W.Va.1998); *Smith,* 127 S.W.3d at 842.

Because Holcim served its petition on HWI within three months after the date the arbitration panel mailed its decision to the parties, Holcim's petition was timely. *Id.*

### Holcim's Failure to Apply For a Stay

■ HWI next contends that Holcim cannot dispute the existence of an arbitration agreement because it failed to apply for a stay under section 171.023 of the TAA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.023 (Vernon 2005).

Section[5] 171.088(a)(4) states that a court "shall vacate" an arbitration award if "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection." Tex. Civ. Prac. & Rem.Code Ann. § 171.088(a)(4) (Vernon 2005). Section 171.023 (which is found in Subchapter B) states that "[a] court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate." Tex. Civ. Prac. & Rem.Code Ann. § 171.023(a).

---

**4.** Since July 2001, the American Arbitration Association's rules have provided for delivery by "personal or electronic service." *See* Am. Arbitration Ass'n, Constr. Indus. Dispute Resolution Procedures R–48 (eff. July 1, 2001), http://www.adr.org/sp.asp?id=22180 (current version at Am. Arbitration Ass'n, Constr. Indus. Arbitration Rules, R–46 (eff.

Sept.15, 2005), http://www.adr.org/sp.asp?id=22004).

**5.** The term "section" as used hereinafter refers to a section of Chapter 171 of the Civil Practice & Remedies Code (the TAA), unless otherwise indicated.

Section 171.088(a)(4) on its face does not require a party to seek a stay. Rather, it provides that, if a party chooses to file a stay application and the court finds that there is an agreement to arbitrate, then that party cannot later raise the lack of an arbitration agreement as a ground to vacate an arbitration award.

We have found no authority to support the proposition that the filing of a stay application under section 171.023 is a mandatory prerequisite to the filing of a motion to vacate an arbitration award. HWI cites *Women's Regional Healthcare, P.A. v. FemPartners of North Texas, Inc.* in support of its position, 175 S.W.3d 365 (Tex.App.-Houston [1st Dist.] 2005, no pet.). However, that court decided that a motion to vacate was without merit because the appellant had not objected to the lack of an arbitration agreement during the arbitration proceeding and not because the appellant had failed to file a stay application. *See id.* at 368–69.

Prior to the second phase of the arbitration proceedings, Holcim stated that HWI was not a necessary party under the turnkey agreement because Holcim's contract was with Watkins alone. Holcim also filed a motion to bar HWI's claims on the basis that there was no arbitration agreement between Holcim and HWI. Thus, Holcim's petition to vacate the arbitration award is not barred because of Holcim's failure to seek a stay under section 171.023.

### Estoppel

■ HWI next contends that Holcim is estopped to deny that HWI's claims lie within the scope of the arbitration clause in the turnkey agreement because Holcim sought affirmative relief against HWI in the arbitration proceedings.

HWI cites *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.* to support its general estoppel argument. 105 S.W.3d 244 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). In that case however, Tanox never denied the existence of the arbitration agreement and "demanded" arbitration of the claims at issue, which it later contended were beyond the scope of the arbitration agreement. *See id.,* 105 S.W.3d at 267–68.

Here however, before the commencement of the second phase of the arbitration proceedings, Holcim filed a motion to bar consideration of HWI's claims because of the lack of an arbitration agreement between them. Holcim participated in the arbitration process after filing this written "objection," and the arbitration panel ultimately rejected Holcim's position on this issue.

■ "[W]here a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred." *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1510 (3rd Cir.1994), *aff'd,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *accord Bridas S.A.P.I.C. v. Turkmenistan,* 345 F.3d 347, 355 (5th Cir.2003). Because Holcim initially objected to the arbitrability of HWI's claims before participating in the second phase of the arbitration proceedings, Holcim is not estopped to deny that HWI's claims lie within the scope of the arbitration clause in the turnkey agreement.

### Equitable Estoppel

■ HWI also contends that, even if it was not a party to the arbitration agreement between Holcim and Watkins, Holcim was required to arbitrate under the doctrine of equitable estoppel.

■ "A party that is not a signatory to an arbitration agreement may enforce the agreement's provisions if the non-signato-

ry 'falls into an exception, recognized under general equitable or contract law, that would allow such enforcement.'" *In re Merrill Lynch Trust Co., FSB,* 123 S.W.3d 549, 554–55 (Tex.App.-San Antonio 2003, orig. proceeding) (quoting *In re Mohamed,* 89 S.W.3d 830, 836 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding)).

■ A non-signatory may compel arbitration in two ways: (1) when "the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the nonsignatory"; and (2) "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *In re McMillan,* 66 S.W.3d 477, 482 (Tex.App.-Dallas 2001, orig. proceeding).

HWI argues that Watkins, a signatory to the arbitration agreement with Holcim, alleged claims involving interdependent and concerted misconduct on the part of both Holcim and HWI. HWI points to Watkins's claim that Holcim breached the turnkey agreement because it excluded Watkins in its communications with HWI concerning design changes and the resizing and relocation of equipment.

However, we hold that equitable estoppel does not apply because there are two separate claims based upon two separate agreements, each of which contained different arbitration provisions. In Watkins's counterclaim against Holcim, Watkins alleges that Holcim breached the turnkey agreement between Watkins and Holcim. Watkins's third-party claim against HWI alleges HWI breached the purchase agreement between Watkins and HWI. Watkins's claims against HWI arise solely under the purchase agreement and not under the turnkey agreement. *See*

*Woodhaven Homes, Inc. v. Alford,* 143 S.W.3d 202, 205–06 (Tex.App.-Dallas 2004, no pet.); *see also McMillan,* 66 S.W.3d at 482–83. Accordingly, we conclude that equitable estoppel does not preclude Holcim from objecting to the arbitrability of HWI's claims.

### Existence of Arbitration Agreement Between Holcim and HWI

■ In general, a party seeking to compel arbitration under the FAA must establish that: (1) there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope. Doubts regarding an agreement's *scope* are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA. However, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists," because "the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so."

*In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737–38 (Tex.2005) (orig. proceeding) (first quotation from *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003)) (second quotation from *Bridas S.A.P.I.C.,* 345 F.3d at 354 n. 4) (other citations omitted). Under the FAA, principles of state contract law determine whether there is a valid agreement to arbitrate. *Id.* at 738 (citing *First Options of Chicago,* 514 U.S. at 944, 115 S.Ct. at 1924).

■ "An arbitration clause is interpreted under contract principles and its language will be enforced according to its plain meaning unless that would defeat the parties' intent." *In re C.A.K.,* 155 S.W.3d 554, 559 (Tex.App.-San Antonio 2004, pet. denied). "If the written instrument is so

worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc., v. Parks*, 1 S.W.3d 96, 101 (Tex.1999). We presume that the parties intended every clause to have an effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

■ The only arbitration agreement to which Holcim is a party is the turnkey agreement between Holcim and Watkins. Holcim argues that this agreement does not permit compelled arbitration between Holcim and one of Watkins's subcontractors.

HWI responds that consolidation provisions included in the turnkey agreement show that the turnkey agreement and its arbitration clause were meant to include all claims and disputes between HWI and Holcim. HWI argues that the contract documents show that the planning, designing, and construction of the project was a concerted and joint undertaking between all three parties, and that the provisions of the turnkey agreement were negotiated between all three parties. HWI refers to minutes of meetings between the three parties and a letter of intent from Holcim that included all three parties as evidence that the turnkey agreement was to apply to all three parties. HWI also states that conditions in the turnkey agreement recite contractual obligations between HWI and Holcim directly.

The pertinent provisions of the Turnkey Agreement are reproduced below:

General Condition 15.01C

All claims, disputes and other matters in question between OWNER [Holcim] and DESIGN/BUILDER [Watkins] arising out of or relating to the Contract Documents or the breach thereof ... will be decided by binding arbitration.

General Condition 15.01.E

Except as provided in paragraph 15.01.F below, no arbitration arising out of or relating to the Contract Documents shall include by consolidation, joinder or in any other manner any other individual or entity who is not a party to this contract unless:

1. the inclusion of such other individual or entity is necessary if complete relief is to be afforded among those who are already parties to the arbitration, and

2. such other individual or entity is substantially involved in a question of law or fact which is common to those who are already parties to the arbitration and which will arise in such proceedings, and

3. the written consent of the other individual or entity sought to be included and of Owner and Design/builder has been obtained for such inclusion, which consent shall make specific reference to this paragraph; but no such consent shall constitute consent to arbitration of any dispute not specifically described in such consent or to arbitration with any party not specifically identified in such consent.

General Condition 15.01F.

Notwithstanding paragraph 15.01E, if a claim, dispute or other matter in question between OWNER and DE-

SIGN/BUILDER involves the Work of a Subcontractor, Supplier or Engineer either Owner or design/builder may join such entity as a party to the arbitration between owner and design/builder hereunder. Design/builder shall include in all subcontracts required by paragraph 6.05.D a specific provision whereby the Subcontractor consents to being joined in an arbitration between owner and design/builder involving the Work of such Subcontractor. Nothing in this paragraph 15.01.F nor in the provision of such subcontract consenting to joinder shall create any claim, right or cause of action in favor of Subcontractor, Supplier or Engineer against Owner.

Supplementary Condition 15.0(2)

Multiparty Proceeding. The parties agree that all parties necessary to resolve a claim shall be parties to the same mediation or arbitration proceeding. Design/builder shall include appropriate similar provisions in all other contracts and subcontracts relating to the Work to provide for arbitration of disputes in accordance with the provision of Exhibit GC–A and consolidation of arbitration.

The turnkey agreement does allow the consolidation of claims between necessary parties and subcontractors. However, this right of consolidation does not subsequently confer a right to a non-signatory subcontractor like HWI to compel Holcim into arbitration. The plain language of the contract allows the joinder of a third party into arbitration when consent is obtained from the third party, Holcim, and Watkins. However, the agreement states that "no such consent shall constitute consent to arbitration of any dispute not specifically

described in such consent." Although Holcim consented to allow Watkins to bring HWI into the arbitration proceedings, it did not consent to the arbitration of claims between HWI and itself.

The turnkey agreement contemplates multiparty proceedings and requires Watkins to include similar arbitration provisions in its contracts with subcontractors. However, the turnkey agreement specifies that the inclusion of such arbitration provisions in contracts with subcontractors does not "create any claim, right or cause of action in favor of Subcontractor, Supplier or Engineer against Owner." Thus, the turnkey agreement explicitly provides that the arbitration provision in Watkins's contract with HWI does not confer additional rights "in favor of [HWI] against [Holcim]."

Holcim relies on the Fifth Circuit's decision in *Del E. Webb Construction v. Richardson Hospital Authority* to support its claim that HWI could not compel arbitration of its claims against Holcim under Holcim's arbitration agreement with Watkins. 823 F.2d 145 (5th Cir.1987), *overruled on other grounds by Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452–53, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003) (plurality opinion); *see also Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.,* 343 F.3d 355, 363 (5th Cir.2003).[6]

In *Del E. Webb Construction,* an owner had an agreement with a contractor and a separate agreement with an architect. 823 F.2d at 146–47. Both contracts contained joinder provisions and arbitration clauses. The contractor attempted to compel arbi-

---

**6.** The Fifth Circuit explained in *Pedcor Management Co.* that the Supreme Court's plurality opinion in *Green Tree Financial Corp.* "effectively overruled" the holding in *Del E. Webb Construction* that a court rather than an arbitrator should determine whether the parties have agreed to consolidate separate arbitration proceedings. *See Pedcor Mgt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.,* 343 F.3d 355, 363 (5th Cir.2003).

tration between the architect and itself, relying on the joinder provisions in the contract between the owner and the contractor. *Id.* at 148.

The Fifth Circuit held that the contractor could not compel arbitration with the architect because there was no arbitration agreement between them.

> We agree that [the architect] could not be compelled to arbitrate under the Owner–Contractor contract. But [the contractor] could compel the [owner] to arbitrate under the arbitration clause in the Owner–Contractor contract, and the [owner] could compel [the architect] to arbitrate under the arbitration clause in the Owner–Architect contract. Nevertheless, arbitration of [the architect's] counterclaim against the contractor was improper. [The architect] and [the contractor] have not agreed to arbitrate disputes between them.

> Undoubtedly, the district court was concerned, as are we, about the potential for piecemeal litigation. But as the Supreme Court explained in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985):

>> The preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.

*Id.* at 148.

HWI distinguishes *Del E. Webb Construction* on the basis of HWI's assertion that there are not separate agreements here, but a tripartite contractual relationship among HWI, Watkins, and Holcim which cause contractual obligations to flow among all parties involved. However, in construction projects of this nature there will be numerous obligations and negotiations flowing among everyone involved in the project. These dealings and relationships do not in and of themselves give rise to an agreement to arbitrate or necessarily imply a contractual relationship.

As the Texas Supreme Court has explained:

> The work to be performed under a second-tier subcontract will inherently be related to and, to a certain extent, defined by contracts higher in the chain. If this were a sufficient basis for binding a non-signatory subcontractor, arbitration agreements would become easier to enforce than other contracts, counter to the FAA's purpose.

*Kellogg Brown & Root,* 166 S.W.3d at 740 (citation omitted).

The plain language of the turnkey agreement evidences the intent of Holcim to arbitrate with Watkins but does not confer on HWI a right to compel arbitration of its claims against Holcim. Accordingly, there is no arbitration agreement between HWI and Holcim. Therefore, we sustain Holcim's first issue.

Because we have sustained Holcim's first issue, we need not address the remainder of its issues. We reverse the judgment and remand this cause for further proceedings consistent with this opinion.

Chief Justice GRAY, concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting.

I write separately, but briefly so as not to further delay this appeal, for the purpose of explaining the portion of this

Court's judgment to which I dissent.[1] Part of the result of the arbitration panel's decision in the arbitration between WEC and HWI, the phase II part, was a determination that the money being held by Holcim and owed to WEC, as determined in phase I of the arbitration, should be paid directly by Holcim to HWI and that payment would extinguish Holcim's liability for that portion of the phase I award to WEC.

This portion of the arbitration decision, confirmed by the trial court, does not seem to be implicated by the lack of an arbitration agreement between Holcim and HWI.[2] Further, it seems to be precisely the type of determination for which this type of multi-party arbitration proceeding, under which different disputes, arising under different contracts, requiring different parties to arbitrate those disputes, but all arbitrated within one proceeding, is designed.

This is simply the result of clearly separating the disputes which were being arbitrated under two different arbitration provisions, in two different contracts, between different parties, but also avoiding inconsistent results by having one arbitration panel conduct a single proceeding. The two arbitrations had one common party, WEC. In one dispute, Holcim was determined to owe that common party, WEC, funds for certain equipment and services which had been provided by a subcontractor. In the same overall proceeding, before the same arbitrators, but under a different arbitration provision in a different contract, the common party, WEC, was determined to owe the subcontractor, HWI, for the same equipment and services that the common party, WEC, had been determined to be due payment from Holcim.

Thus, the order of a direct payment from Holcim to HWI for that equipment and services is not the result of arbitration between Holcim and HWI and should not be interfered with in this appeal. To the extent described, I dissent from this Court's judgment, but otherwise, join the result thereof.

---

1. There are a number of fairly broad sweeping statements or phrases stated as holdings for which I find inadequate authority. I have not identified them nor written herein to address them because I have also determined that these unsupported or erroneous statements are immaterial to the disposition of this appeal.

2. Likewise, the confirmation order confirmed other parts of the arbitrator's decision for the proceedings between Holcim and WEC and also other parts of the arbitration proceeding between WEC and HWI that were not attacked on appeal and should remain undisturbed by this Court's judgment.